## WRAY *v.* HARRISON *et al.*, and *vice versa.*

1. The charter of a town provided that the town authorities should have power to license the sale of spirituous and malt liquors, but should not grant any application for such license unless the same was accompanied by " a petition signed by two thirds of the citizens of such town, asking for the license." *Held*, that the term " citizens," as used in the charter, embraced only the qualified voters of the town.
2. The judge erred in striking portions of the answer of the defendant to the rule for contempt, but committed no error in dissolving the injunction.

Argued June 23, — Decided August 7, 1902.

Attachment for contempt. Dissolution of injunction. Before Judge Gober. Cherokee superior court. May 5, 17, 1902.

*Goodwin, Anderson & Hallman* and *N. A. Morris,* for Wray, cited Civil Code, §§ 1810, 1811.

*D. W. Blair,* contra, cited, on contempt: 9 N. Y. 263; 45 N. Y. 654; 1 How. Pr. (N. S.) 250 ; 110 Ind. 205 ; 40 Vt. 662 ; 57 Iowa, 356 ; 74 Ala. 427; 36 La. An. 941 ; 10 Am. & Eng. Enc. L. 1010; 2 High, Inj. (2d ed.) §§ 1439, 1464; 41 *Ga.* 476. On license, 76 *Ga.* 308; 67 *Ga.* 583 ; Civil Code, §§ 4, 1804, 5722, 6030; 36 Ark. 183; 90 Mo. 594.

COBB, J. On April 14, 1902, Harrison and others, as citizens and residents of the town of Ball Ground in Cherokee county, filed their petition against J. W. Wray, alleging that the defendant was maintaining and running a " blind tiger" in the town of Ball Ground by selling intoxicating and spirituous liquors in violation of law. One of the paragraphs of the petition was in the following language: " Petitioners show that the said Wray claims to be operating said place under a pretended license granted him by the town council of Ball Ground, but petitioners charge that said so-called license is absolutely null and void, for the reasons hereinafter stated." The principal reason alleged why the license was void was that it was not granted upon a petition signed by two thirds of the citizens of the town, asking that the license be issued, as required by law. The prayer of the petition was that an injunction be granted, restraining the defendant "from the further prosecution and running of said ' blind tiger,' and from the further selling of any spirituous, malt, or intoxicating liquors in said town." The defendant filed a demurrer and answer, and introduced certain evidence claimed to support the allegations of the answer thus filed. The demurrer did not raise the question as to whether one openly selling liquor under color of authority was running a "blind tiger." After considering the pleadings and the evidence, the judge, on April 21, 1902, granted an order " that the prayer for injunction be and the same is hereby granted, and the defendant is restrained as prayed." This judgment was not excepted to. On April 28, 1902, there came on to be heard before the judge of the superior court of Cherokee county a petition filed by the persons who were the plaintiffs in the foregoing petition, alleging that the order grant-

ing the injunction was still of force, and that since the granting of
the same the defendant continued in the sale of spirituous and in-
toxicating liquors in the town of Ball Ground, in violation of the
injunction, and is now engaged in the sale of such liquors at such
town.    The plaintiffs prayed that the judge might grant such an
order and impose such a penalty upon the defendant as would be
reasonable and proper for the enforcement of the order and the pro-
tection of the petitioners.    The defendant answered this petition,
setting up that he was not then and had not been violating the or-
der granting the injunction ; that he closed his saloon immediately
upon the granting of the order, and had not opened the same until
the 25th of April, 1902, at which time more than two thirds of the
citizens within the corporate limits of the town of Ball Ground pe-
titioned the mayor and council of the town to grant defendant a
license to retail liquor therein, as prescribed by the Acts of 1882 – 3
of the General Assembly of the State; that, upon his compliance
with the conditions prescribed by such law, the mayor and coun-
cil granted to him a license, under authority of which he opened
his saloon ; and that defendant was enjoined by the court from sell-
ing liquor under his old license.    On May 5, 1902, the court, upon
motion of the plaintiffs, granted an order striking, and refusing to
allow the defendant to prove by evidence, all that portion of his an-
swer which alleges the obtaining of a new license and undertakes
to justify his conduct in selling liquor in Ball Ground since the
granting of the injunction against him.    The court then entered
an order adjudging the defendant to be in contempt, making the
attachment against him absolute, ordering him to pay a fine of $200
and be imprisoned in the common jail of the county for twenty
days.  To the order striking the portions of the answer referred to
and refusing to allow him to prove the same by evidence the de-
fendant excepted.

On May 7, 1902, Wray filed a petition praying that the injunc-
tion entered against him on April 21 be dissolved, and that the
order for the attachment be vacated or so modified as to provide for
a punishment as for a technical but not an intentional violation of
the injunction.    This petition contained substantially the follow-
ing allegations : Petitioner did not understand that the injunction
issued against him restrained him from procuring or the mayor and
council from issuing to him a new license, but regarded the order

simply as one restraining him from selling liquors under the license which he then had.   On April 25, 1902, petitioner filed with the mayor and council a petition asking that a license to retail liquors be issued to him, this petition being signed by sixty-three qualified voters of the town of Ball Ground, there being only ninety-one qualified voters in the town. This petition was adjudged by the mayor and council to be sufficient, and, the petitioner having complied with the law in all other respects, a license was duly issued to him.   He had no intention of violating the order of court, but fully believed this license conferred upon him the right to sell liquors in the town of Ball Ground.   Attached to this petition as exhibits were copies of the minutes of the town council of Ball Ground, showing that Wray, on April 25, 1902, presented a petition for a retail liquor license, signed by sixty-three persons, and that a resolution was passed reciting that, "more than two thirds of the citizens of the town of Ball Ground having filed a petition asking that a license be granted J. W. Wray to sell spirituous and malt liquors at retail within the corporate limits of such town, it is resolved that, in compliance with such petition and the act of 1882–3 of the General Assembly, a license be granted" to the petitioner for a sum named.   It also appeared from the minutes that a bond had been given and oath subscribed by Wray as required by law.   There was also attached to the petition a copy of the license granted to Wray, dated April 25, 1902, and authorizing him to retail liquors within the town of Ball Ground.   Affidavits of certain persons were also attached to the petition, showing that on the 25th day of April, 1902, there were living in the town of Ball Ground only 91 male persons over the age of 21 years.   Also affidavits from the 63 persons who signed the petition to the mayor and council to grant the license, stating that each of them was, on April 25, 1902, a citizen of the town of Ball Ground, over the age of 21 years.   A demurrer was filed to this petition by the plaintiffs in the original petition for injunction, upon the ground that Wray, by the order of April 21, 1902, had been adjudged in contempt, and that, as it appears from the petition that he has violated this order and made no effort to obey the same, he is not entitled to be heard before the court on a motion to dissolve the injunction.   They also answered the petition, setting up that the population of the town of Ball Ground on April 25, 1902, was not less than 350 persons, all of whom were citi-

zens under the constitution and laws of the United States and the State of Georgia; that the total number of female citizens of twenty-one years of age and over, residing in the town, was at least 80, and the minors, males and females, who were citizens of the town were at least 192; that of the female citizens in the town at least 15 were single persons, and 5 were widows who were heads of families. The answer alleges that for this reason Wray had no legal license to retail spirituous liquors on April 25, 1902, and that the injunction against him should not be dissolved. On May 17, 1902, the judge granted an order dissolving the injunction, "to the extent of allowing the movant to sell liquor under the new license granted April 25, 1902." To the granting of this order Harrison and others excepted. In the bill of exceptions they assign this order as error, because Wray was not entitled to present and have heard his motion to dissolve the injunction, because under the evidence the license issued to him on April 25, 1902, was illegal and void, the petition therefor not having been signed by two thirds of the citizens of the town as required by law.

1. Under the charter of the town of Ball Ground the mayor and council were authorized to issue licenses for the sale of spirituous and malt liquors at retail, but no license could be issued unless the applicant for the same presented with his application "a petition signed by two thirds of the citizens of said town, asking for such license." Acts 1882–3, p. 478, sec. 14. One of the questions to be determined in this case is, who are citizens of the town of Ball Ground, within the meaning of that provision of the charter just quoted? Does the term "citizens" include males and females, adults and infants, or did the General Assembly use the word as synonymous with "qualified voters?" A citizen has been defined to be "A person, native or naturalized, of either sex, who owes allegiance to a government, and is entitled to reciprocal protection from it." Webster's International Dictionary. In this broad sense not only adult males are citizens but females of any age and infants of either sex. Infants, insane persons, and felony convicts whose offenses involve moral turpitude, even when actually serving a term of penal servitude, are also citizens within the broad meaning of the term. Certainly it was not the intention of the General Assembly to provide that an applicant for the sale of liquors in the town of Ball Ground should present a petition signed by two

thirds of all these different classes. The idiot, the lunatic, the convict, and the babe in arms were certainly not within the contemplation of the General Assembly when it used the term "citizens." Infant citizens who have arrived at the age of discretion are not considered by the law sufficiently matured to discharge such civil functions as are connected with the making or the administration of the law. Civil Code, § 1811. Females of all ages are and have always been in this State relieved of the burdensome duties of citizenship, such as military, jury, police, patrol, and road duty. Being excused from the performance of the burdensome duties of citizenship, they have never had conferred upon them some of the privileges of citizenship, which, although their exercise may carry with it little or no burden, at the same time are privileges fraught with responsibility. Both society and the law, however, in many respects accord to females greater rights and greater protection than to males. Females, being by nature burdened with duties and responsibilities which men can not perform, have cast upon them, by the demands of society, duties and responsibilities which, even if capable of being performed at all by males, can not be so well performed. Those who formed and framed governments in the past, in consideration of these facts, have generally done that which has been done in this State, — withdrawn from the female citizen all privileges of citizenship relating to the affairs of government, and relieved her from all of the burdensome duties which the male citizen is required to perform in return for the protection which the government gives to him. The female citizen has been and will always be at least equally protected with males by the law, notwithstanding the disabilities imposed upon her by nature which prevent her from performing many of the more important duties of citizenship. The law always has protected and always will protect this class of citizens, and should always relieve them from all duties relating to governmental affairs, that they may not be disturbed in the performance of those duties imposed upon them by nature and society, and which are higher and more important to the welfare of society than the exercise of any civil function.

From motives of the character just referred to, the framers of our government, out of deference to the superior rights of the female citizen, not only excused her from the burdensome duties of citizenship above referred to and the duties incident to the elective

franchise, but also, as a general rule, relieved her from the duties incident to holding public office; and in this State it is provided distinctly that females are not eligible to any civil office or to the performance of any civil function unless specially authorized by law. Civil Code, § 1810.   The settled policy of this State is that female citizens shall not be harassed and annoyed with matters relating to governmental affairs.   The lawmakers of this State have never been so inconsiderate or unkind as to impose duties purely political upon the female citizens of the State.   All laws must, therefore, be construed in the light of this fact.   Wherever a civil function is to be exercised or a duty political, or quasi-political, is to be performed, unless there is something in the statute requiring the contrary construction, it is to be construed as imposing those duties upon that class upon which the law generally casts such duties, that is, the qualified voters of the State or political division dealt with in the statute. It is the general rule in this State that questions relating to the sale of liquor are submitted to the qualified voters of the locality to be affected.   The general local option law and various local laws relating to the regulation of the sale of liquor in the different localities of this State submit the question to the qualified voters of the locality to be affected.   Wherever the General Assembly has seen proper to allow any other class of citizens to be heard on this question, even by petition, the act has expressly provided that such other class may be heard.   See the act of 1875 relating to Schley county, which required that consent to the granting of a license "should be signed by two thirds of the citizen freeholders, male and female, living within three miles of the place at which the applicant proposes to sell."   Acts 1875, p. 354.   And see the act of 1888 relating to Whitfield county, which provided that the sale of domestic wines should not be legal if a "majority of those above the age of eighteen, male and female, residing within two miles of such place of manufacture and sale, shall at any time file in the office of the ordinary objections in writing to such sale."   Acts 1888, p. 314.   To authorize a female citizen to hold public office the law of this State in terms provides that there must be an express provision to this effect.   To authorize a female citizen to exercise any civil function there must also be an express statute conferring this authority.   Therefore, when the words of a statute are ambiguous or equivocal, that construction must be placed upon it

which will relieve the female citizen from the exercise of civil or political functions. We do not think that the General Assembly, in using the word "citizens" in the charter of Ball Ground, intended to embrace within its meaning either females residing in that town or any class of citizens other than qualified voters.

2. It follows from what has been said that the first license to Wray was illegal and void, and that the second was lawful and regular in all respects. The judge granted the injunction to restrain Wray from selling liquor under the first license, upon the ground that such an injunction was authorized by what is known as the "blind tiger" law. Acts 1899, p. 73, Van Epps' Code Supp. § 6654 et seq. Whether a person selling liquor openly and under color of authority is running a "blind tiger" within the meaning of that law is a question not raised in the present case. The injunction, however, did not have the effect to restrain Wray from proceeding to secure a license to be issued to him in accordance with the law; and when such a license was issued, this authorized him to sell. Properly construed, the order of the judge simply restrained Wray from selling liquor in the town of Ball Ground without a lawful license, and. a sale by him after the injunction was granted, under authority of a license which was legal and regular in all respects was not a violation of the injunction. The judge therefore erred in striking that part of the answer of the defendant to the rule for contempt which attempted to set up that the sales which were alleged to have been in violation of the order of the court were made under authority of a lawful license which had been granted after the order was passed. Under the allegations of his answer Wray never violated the injunction. He was never in contempt. He should not have been attached for contempt; and this being true, the fact that he was attached constituted no sufficient reason for refusing to hear him on the motion to dissolve the injunction. If he had really violated the injunction, then of course he should not have been heard on the motion to dissolve until he had purged himself of this contempt. See, in this connection, *Remley* v. *DeWall*, 41 *Ga.* 466 (3); *Jacoby* v. *Goetter*, 74 Ala. 427; 2 High, Inj. (3d ed.) § 1464. The judge erred in his rulings which resulted in the defendant being attached for contempt, and there was no error in dissolving the injunction.

*Judgment in one case reversed; in the other affirmed. All the Justices concurring, except Lewis, J., absent.*