## MARIETTA CHAIR COMPANY v. HENDERSON.

1. In the absence of constitutional restrictions, the lawmaking power of a State may vacate a street in a municipality.
2. The power to vacate may be delegated to the municipal corporation.
3. When a street is vacated, the interest of the public therein ceases, and the owners of the fee, who are presumptively the abutting landowners, become entitled to use the property without regard to the former servitude imposed upon it.
4. If the closing of a street results in damaging private property, within the meaning of the constitution of this State, the owner of the property thus damaged, by allowing the street to be closed without instituting proceedings to prevent it, waives his right to demand compensation as a condition precedent to the closing of the street, and is remitted to his action at law for damages.
5. An act of the General Assembly authorizing the closing of a street need not provide for the payment of compensation to those whose property is thereby taken or damaged; there being a general law of the State providing a method for ascertaining the compensation to be paid in all such cases.
6. Where a decree based on a consent verdict is entered, requiring the removal of an obstruction in a public street, and subsequently a state of facts arises which renders the maintenance of the obstruction lawful and proper, a peti-

tion praying for the granting of an order declaring that the decree is no longer binding should be granted.

7. While a judgment refusing in general terms to grant specified relief will be affirmed if the record shows that any valid objection was raised to the petition, none of the objections set up in the demurrers or answer in the present case were well taken.

Argued November 14,—Decided December 10, 1904.

Motion to revoke order of injunction.    Before Judge Gober. Cobb superior court.    February 1, 1904.

Henderson brought an action against the Marietta Chair Company, to enjoin it from obstructing a portion of Hansell street, sometimes called McClellan street, in the City of Marietta.    The defendant claimed authority to obstruct the street under a resolution of the mayor and council, adopted on September 1, 1902, which relinquished all right in the street to the plaintiff and defendant respectively as the abutting landowners.    At that time there was no express legislative authority for the closing of this street.    A consent verdict was rendered, in which the defendant was perpetually enjoined in accordance with the prayers of the petition, and upon this verdict a decree was entered, and no exception was ever taken to the decree.    Subsequently Henderson presented a petition, alleging that the defendant had failed to comply with the decree and had violated it by continuing to obstruct the street.    The defendant answered, and upon the hearing the court passed an order requiring the defendant to remove the obstruction as required by the decree within twenty days, or in default show cause why it should not be attached for contempt. To this order the defendant excepted, and the judgment was affirmed by the Supreme Court.    119 *Ga.* 65.    After this judgment was affirmed, and before the expiration of twenty days from the time the judgment of the Supreme Court was made the judgment of the trial court, the Marietta Chair Company presented a petition, in which it was alleged that since the decree had been rendered a new state of facts had arisen; that the General Assembly, on August 10, 1903 (Acts 1903, p. 705), had passed an act ratifying the action of the mayor and council in authorizing that portion of Hansell street which was in controversy to be closed, and specifically authorizing them to convey that portion of the street to the adjacent landowners.    The act conferred power to

exercise the authority granted, by a majority vote of the mayor and council, either at a called or regular meeting, and with or without advertising their intention to close the street. It was alleged, that, pursuant to this authority, the mayor and council had passed a resolution closing the street, and that the mayor, under authority of the resolution, had conveyed the interest of the city in the street to the adjacent landowners, the north half being conveyed to the defendant as one of the adjoining owners. The petition prayed for the passage of an order relieving the petitioner from complying with the decree, and also for general relief. The defendant appeared and filed demurrers both general and special, and also answered. The special demurrer alleged that the petition was defective, because there was nowhere set out therein the petition, orders, and decree in the original case, which were referred to in the petition in the present proceeding. The general demurrer alleged that the petition set forth no cause of action and no right to the relief prayed for, and constituted no defense to the order requiring the removal of the obstructions; and also attacked the act authorizing the closing of the street as unconstitutional and void. The grounds of this attack, as set forth in the demurrer, were that the act sought to take private property of the respondent and give it to the movant, a private corporation, for its own private use, without compensation, and violated those provisions of the constitution of this State which declare that "protection to person and property is the paramount duty of government, and shall be impartial and complete;" that "no person shall be deprived of life, liberty, or property, except by due process of law;" that "private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid;" that no "law impairing the obligation of contracts, or making irrevocable grants of special privileges or immunities, shall be passed;" that "the General Assembly shall not, by vote, resolution, or order, grant any donation or gratuity in favor of any person, corporation, or association;" that "all rights, privileges, and immunities which may have vested in or accrued to any person . . under . . any judgment, decree, or order, or other proceeding of any court of competent jurisdiction in this State heretofore rendered shall be held inviolate by all courts before

which they may be brought in question, unless attacked for fraud."

The demurrer also set up that the act was in violation of those provisions of the constitution of the United States which declare that "no State shall pass any law impairing the obligation of contracts," "no person shall be deprived of life, liberty, or property without due process of law," nor "shall private property be taken for public use without just compensation," that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States," nor "shall any State deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." The demurrer closes with a general averment that the act violates both the constitutions of the United States and of the State, by providing that the private property of the respondent may be taken for a private use of the movant. The answer alleged that the respondent had never had any opportunity to " attack ' the legislative act, no notice of such act having been published as required by law; that one of the counsel for movant was also a member of the General Assembly which passed the act, and that the case was pending in the Supreme Court at the time the act was passed, that the defendant had vested rights under the decree which had never been attacked for fraud or set aside, and it was beyond the power of the General Assembly to interfere with such rights, one of them being the right of access from the street to his property; that the decree, being rendered by consent, was in effect a contract between the parties. The answer attacked the act as unconstitutional upon the same grounds as were set forth in the demurrer. Attached to the answer as exhibits were those portions of the record in the original case which the special demurrer alleged were not set forth in the petition. The motion came on for a hearing, and the court, after holding that the petition in the original case was a part of the record in this case, heard evidence consisting of a certified copy of the resolution of the mayor and council, passed subsequently to the act of the General Assembly, authorizing the closing of Hansell street, and providing for a conveyance of the city's interest therein to the adjoining landowners, it appearing from the resolution that the authority conferred by the act had

been exercised in the terms of the act by resolution adopted by unanimous vote of the mayor and council. There was testimony of the president of the Marietta Chair Company, and also of the mayor of the city, from which it appeared that there was no collusion between the Marietta Chair Company and the city authorities in reference to the matter. It also appeared that the mayor was the guardian of a minor ward who owns stock in the Marietta Chair Company, but that he held no stock in his own right. Henderson objected to the closing of the street, and nothing was paid by the Marietta Chair Company for the relinquishment executed by the city. The pleadings in the original suit and in the application to enforce the decree were all introduced in evidence. The judge reserved his decision, and at a subsequent date passed an order which merely declared that "the application and motion is hereby refused." To this judgment the Marietta Chair Company excepted.

*N. A. Morris* and *King, Spalding & Little*, for plaintiff in error. *J. Z. Foster*, contra.

COBB, J. 1–4. In the absence of constitutional limitations the lawmaking power of the State is vested with plenary authority in reference to the public streets and highways. It may declare an existing street vacated without providing for the submission of the question to judicial inquiry. All questions necessary to be determined in order to decide whether a street shall be vacated or abandoned and the interest of the public therein released are referred to the wisdom and discretion of the lawmaking power. McGee's Appeal, 114 Pa. St. 470; State *v.* Huggins, 47 Ind. 586. In the absence of a constitutional restriction, the power to vacate a street may be delegated by the lawmaking body to municipal and other subordinate public corporations. Polack *v.* Trustees, 48 Cal. 490; Brook *v.* Horton, 68 Cal. 554. A municipal corporation has no power, in the absence of express legislative authority, to authorize the erection of permanent structures in a public street, which interfere with the free use of such street by the public. *Savannah R. Co.* v. *Woodruff*, 86 *Ga.* 96, and cit.; *Almand* v. *St. Ry. Co.*, 108 *Ga.* 424, and cit.; 27 Am. & Eng. Enc. Law (2d ed.), 113. It necessarily follows that the power to entirely vacate a street does not rest in the municipal authorities,

in the absence of an express delegation of authority by the General Assembly. When a street has been vacated, either directly by an act of the General Assembly, or by action of a municipal corporation under the authority of an express delegation of power, the interest of the public in the street ceases, the burden upon the land which has been used as a street is removed, and the owner of the fee again becomes entitled to use his property in such manner as he may see proper, without regard to the former servitude to which it was subject. If the fee in the street was in the State, or in the city, the vacating of the street leaves the State or the municipality, as the case may be, in the possession of the property, to use it for any purpose that it may see proper, without reference to its former use. If the fee to the street is in the adjacent landowners, then the street, relieved of any right in favor of the public, becomes again subject to use by the abutting owners, without reference to the former rights of the public. Whenever a street is vacated, the presumption is, until the contrary appears, that the fee is in the adjacent landowners and that the right of each extends to the middle of the way. *Harrison* v. *Augusta Factory,* 73 *Ga.* 447, and cit.

It is contended that though the General Assembly may have authority to vacate a street by direct enactment, or to authorize its vacation by the municipal authorities, when in the exercise of this power the adjacent landowner is damaged by the loss of the right to use the land as a street, such owner must be compensated in damages for this loss. The constitution declares that private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid. Civil Code, § 5729. It has been held that the vacating of a street is neither a taking nor a damaging of private property in such a sense as to authorize the adjacent landowner or others who have been accustomed to use the street to claim compensation for the deprivation of this right; that any loss resulting from the exercise of the power to vacate a street is damnum absque injuria. Paul *v.* Carver, 24 Pa. St. 207; Levee Dist. No. 9 *v.* Farmer (Cal.), 23 L. R. A. 388; Coster *v.* Albany, 43 N. Y. 399; Gray *v.* Land Co., 26 Iowa, 387. But there is also authority for the proposition, that when the vacating of the street occasions to the adjacent owner or others who have been accustomed to use the street such pecu-

liar loss as is not of the same character as that inflicted upon the general public, equity will interfere in behalf of such owner to restrain the attempted abandonment of the street, and that such person will have a right of action against a municipal corporation which has exercised a power to vacate delegated to. it by the State.    Heller v. R. Co., 28 Kan. 625; Horton v. Williams, 99 Mich. 423; Brady v. Skinkle, 40 Iowa, 576.  It has also been said that if the vacating of the street has the effect to entirely destroy or seriously impair the right of ingress and egress of a person owning property approached from the street, the loss thus sustained is not one suffered in common with the general public, and that such a person would be entitled to compensation.    Chicago v. Bldg. Assn., 102 Ill. 379, 40 Am. Rep. 598; Mills, Em. Dom. (2d ed.) § 318; Chicago v. Burcky, 158 Ill. 103, 49 Am. St. Rep. 142.    On the other hand it has been held that the destruction of one means of access, when another is left unimpaired, will not give a right of action against a city which has proceeded to vacate a street in the manner authorized by law.    Smith v. Boston, 7 Cush. 254; Fearing v. Irwin, 55 N. Y. 486; Kings Co. Fire Ins. Co. v. Stevens, 101 N. Y. 411.

There are judges of distinguished reputation and courts of high respectability holding that the owners of property abutting upon a street have such a property in the use of the street as that the same can not be destroyed by vacating the street without compensation being made for the loss thus sustained.    Van Witsen v. Gutman, 79 Md. 405; Webster v. Lowell, 142 Mass. 326; Haynes v. Thomas, 7 Ind. 38; Heinrich v. St. Louis, 125 Mo. 424, 46 Am. St. Rep. 490, 28 S. W. 626; Bannon v. Rohmeiser, 90 Ky. 48, 29 Am. St. Rep. 355, 13 S. W. 444; Lindsay v. Omaha, 30 Neb. 512, 27 Am. St. Rep. 415; Bigelow v. Ballerino (Cal.), 44 Pac. 307; Cook v. Quick, 127 Ind. 477; Pearsall v. Supervisors (Mich.), 42 N. W. 77.    See also 27 Am. & Eng. Enc. Law (2d ed.), 115.    In this State it has been held that the erection of a permanent structure in a street, which may have the effect to entirely destroy or seriously impair an existing means of access to the property of an abutting owner, is not a "taking" of private property within the meaning of the constitution.  Hurt v. Atlanta, 100 Ga. 274.    But in the same case it was also held that this was a damaging of the adjacent property in such a way as

would entitle the owner to compensation; but that as the effect of the structure, which was a bridge constructed under authority of law, was such as to increase the market value of the adjacent property to such an extent that the enhancement in value equaled or exceeded the damages sustained, no recovery was permitted.    See, in this connection, *Austin* v. *Terminal Co.*, 108 *Ga.* 680.

The act of 1903, which confirmed the action of the mayor and council in vacating Hansell street in the City of Marietta, and authorized the municipal authorities to complete the act of vacation by relinquishing to the adjacent owners the interest of the public in the street, was valid in every respect; and the Marietta Chair Company is and has been, at least since the date of the execution and delivery of the deed from the city, possessed of every right of property which it or its predecessors in title had in that portion of the street which was originally taken from their property, and the right of the public therein for all purposes has become completely extinguished.    If Henderson, the abutting owner on the opposite side of the street, and now the complete owner of the half of the street abutting upon his property, ever had any right to demand that compensation should be first paid him before the rights of the public in the street were surrendered, for loss of any character sustained by him, he has waived that right by allowing the vacation and abandonment of the street to become complete without resorting to the courts for appropriate relief.    If he ever had the right to demand of the municipality compensation for any loss sustained by him, as a condition precedent to the closing of the street, he should have applied for an injunction before the passage of the resolution carrying into effect the legislative act, or at least before the deeds were executed which that act provided for.    If he has any right to damages at all, he is remitted now to an action at law against the municipality; but on this question we now make no authoritative ruling, for the question is not before us in such a manner as either to authorize or require a ruling upon the subject.    If he has such a right of action, nothing in the judgment now rendered will preclude him from asserting this right hereafter.

It is contended, however, that the original resolution of the mayor and council, the legislative act, the resolution passed sub-

sequently thereto by the mayor and council, and the deeds executed thereunder are all merely component parts of a fraudulent and collusive scheme entered into by the Marietta Chair Company and the municipal authorities to destroy the rights of the public in the street, in order that a private use of the Marietta Chair Company might be subserved. That private property can not be taken for a private use is a rule of practically universal application; the taking of private property for a private way being apparently the single exception. The use of public property for private use is generally, if not always, an abuse of power by those who are the custodians of the rights of the public. See *Mayor of Macon* v. *Harris*, 73 *Ga.* 428 ; Van Witsen *v.* Gutman, 79 Md. 405. There is nothing in the record in this case that would justify a holding that there was any such scheme, even if the courts have authority to inquire into the motives of the General Assembly in passing an act of the character here involved, or into the question whether the General Assembly was imposed upon by those interested in the passage of the act. There is nothing on the face of the act or the resolutions which suggests such a scheme, all indicating merely action by the public authorities adopted for the public benefit. The presumption is that this was the case; and even if this presumption could under any circumstances be rebutted by proof, there is no proof to overcome it in the present case.

Neither the General Assembly nor a subordinate public corporation acting under its authority can lawfully vacate a public street or highway for the benefit of a private individual. The street or highway can not be vacated unless it is for the benefit of the public that such action should be taken. The benefit may be either in relieving the public from the charge of maintaining a street or highway that is no longer useful or convenient to the public, or by laying out a new street or road in its place which will be more useful and convenient to the public in general. If the public interest is not the motive which prompts the vacation of the street, whether partial or entire, the act of vacation is an abuse of power, and especially would it be a gross abuse of power if it is authorized without reference to the rights of the public and merely that the convenience of a private individual might be subserved. As the reason for vacating a highway must therefore

always be that the public interest is to be subserved, it may be that the consequences of this act, which is for the benefit of the public, will give a right under the constitution to claim damages. Upon no other theory can such a right be maintained; but upon this question we now express no decided or authoritative opinion.

5. It was also contended that the act of 1903 was unconstitutional, for the reason that it did not make any provision for compensation to those whose property might be damaged as a result of the act being carried into effect.    In *Parham* v. *Justices,* 9 *Ga.* 341, it was held that private property could not be taken for public purposes without just compensation, and could not be so taken without an act of the legislature authorizing it, and that the act itself must make provision for compensation.    At the date of this decision there was no general law providing a method of ascertaining the damages resulting from the taking of private property for a public use.    In 1894 the General Assembly passed an act providing a method in which damages should be assessed in all cases where private property was taken or damaged for public purposes, and therein declared that all corporations or persons authorized to take or damage private property for public purposes should proceed as provided in the act.    Civil Code, § 4657, et seq. The two things required in the decision referred to are still required, that is, authority to take or damage private property, and provision for ascertaining the compensation to be paid; but since 1894 it is no longer necessary that each act conferring the authority shall itself provide the manner of ascertaining the compensation.    When the authority is conferred, the general law of the State above referred to makes provision for compensation.    Hence it follows that the act of 1903 is not unconstitutional because it does not provide for the payment of compensation.

6. But it is claimed, that, even if the legislative act and the proceedings of the mayor and council thereunder are all valid, the Marietta Chair Company is bound by the judgment rendered prior to the passage of that act, and can not now question the same; and that the decree having been rendered upon a consent verdict, it was in effect a contract between the parties that the status of the property as fixed by the decree should never thereafter be changed, and that it was beyond the power of the General Assembly to interfere with the vested rights of Henderson under the

decree. The fact that the decree was rendered upon a consent verdict does not give it any greater validity than if it had been rendered after a sharp and protracted litigation. Parties are of course bound by judgments rendered by courts of competent jurisdiction to which they have submitted their controversies, and the judgments bind them whether they expressly agree to them or not, and an express agreement that a particular judgment should be rendered gives to that judgment no peculiar character and renders it no more sacred than the ordinary judgment. While a judgment is a contract of record, the agreement which the law implies from such a contract is simply that the parties will stand to and abide what has been decreed in the case upon the law and the facts then involved or which could have been properly involved. But a judgment does not bind the parties as to any matter which was not directly or indirectly involved in the suit, and which, from the nature of the case, could not have been passed upon or adjudicated by the court at the time the judgment was rendered. At the time this judgment was rendered the municipal authorities of Marietta had no power to vacate Hansell street or any part thereof. The judgment that the obstruction be removed therefrom was therefore the only legal and proper judgment that could have been rendered in the case. The power to vacate has been conferred since the judgment, and the act of vacation has been completed. While the placing of obstructions in the street was originally wrongful, the new state of facts which has arisen since the judgment has rendered their maintenance in the street lawful and proper; and we see no reason why the party placing these obstructions may not now stand upon the rights acquired under the legislative act and the resolution of the mayor and council, notwithstanding the prior judgment. A new right has been acquired, which was not and could not have been involved in the controversy resulting in the judgment. See *Pyron* v. *State*, 8 *Ga.* 230; *Wray* v. *Harrison*, 116 *Ga.* 100; Ingram *v.* Water Company (Me.), 19 Atl. 861.

7. It was suggested in the argument, that even if the Marietta Chair Company was entitled to the relief sought, it should have filed an original proceeding in the nature of a bill to reform the decree, or at least should have waited until there was some proceeding instituted to enforce the decree, and then set up the mat-

ters now relied on, in answer to an attachment for contempt. None of the demurrers raised any question as to the procedure followed. The special demurrer simply alleged that certain paragraphs of the petition were defective because they did not set forth documents referred to therein, and the general demurrer set up merely that the plaintiff was not entitled to the relief sought, for the various reasons set forth in the demurrer. It is said that as the order of the judge refusing to grant the relief prayed for was general in its nature, it not appearing therefrom upon what ground the court based its judgment, if any ground taken in either demurrer was a sufficient reason for refusing the relief, the judgment should be affirmed. This is unquestionably the correct rule; but we find no sufficient reason set forth in either of the demurrers for refusing that prayer of the petition, which asked that an order be entered declaring that on account of the new condition of affairs the decree, though proper at the time it was rendered, should no longer be enforced; and we will not now pass upon the question whether the proper procedure was followed. Speaking for myself, I think the procedure followed was not only proper but that the practice is to be commended. The company was apparently in contempt; the decree required the removal of the obstructions; the company continued to maintain them. Instead of waiting for an attachment for contempt to be issued, it comes forward in a respectful application and shows to the court a state of facts which would relieve it from the apparent contempt. The decree was no longer operative upon it, and it was entitled to have entered upon the records of the court an order to this effect. Why should it "stand in jeopardy every hour"? A court of equity is always open for the purpose of proceeding upon mere motion to the enforcement of its orders by attachments for contempt, and I see no reason why it should not be open for one who is apparently in contempt and who comes before it to show his willingness to abide its orders, but that at the same time, under the existing condition of affairs, his conduct, which at one time might have been a contempt of the court, was no longer such.          *Judgment reversed.    All the Justices concur.*