46160. CARNES et al. v. CHARLOCK INVESTMENTS (USA), INC. et al.
(373 SE2d 742)

GREGORY, Justice.

In December 1987 appellee Charlock Investments, Inc. filed a petition for injunction and mandamus, seeking both to enjoin the Gwinnett County Board of Commissioners from keeping a road closed and to order the Board to maintain the road open for public use. Charlock owns 568 acres of undeveloped land fronting the road.

Appellant Carnes owns the "horse farm," a tract of land through which the road runs. In January 1987 Carnes and her sister asked the Board to close the portion of the road running through their property and the Board closed the road without notice.

In May 1987 after the Board had received complaints about the closing, it scheduled a public hearing and to give notice posted two signs at either side of the closed portion of the road. At the hearing, the Board voted to keep the road closed.

At the trial on the petition for mandamus, witnesses testified that the road was used for illegal hunting and illegal dumping of

trash. The Director of Engineering for Gwinnett County testified that the road was winding and steep, with several blind curves, and that head-on collisions were possible. It was also clear that there was an alternate route to Charlock's property. In May 1988 the trial court granted Charlock's petition for injunction and mandamus, and ordered the road reopened.

The procedure for abandonment of a public road in a county road system is codified at OCGA § 32-7-2 (b) (1):

> When it is determined that a section of the county road system has for any reason ceased to be used by the public to the extent that no substantial public purpose is served by it, the county. . .after notice to property owners located thereon, may declare that section of the county road system abandoned. . . .

The trial court held that Charlock never received proper notice under the statute. The court also held that under OCGA § 32-7-2 (b) (1) the Board could not close the road unless it had ceased to be used by the public to the extent that no "substantial public purpose" is served by it. The court explained that when the road was closed in January, 1987 it was still serving a substantial public purpose because school buses and cars used it, and the county considered these facts when they included the road in a bond issue for paving, and because the commission spent $61,750 to build a culvert across the road.

1. Mandamus will issue against a public officer under two circumstances: (1) when a petitioner has a clear legal right to the relief sought, and (2) when there has been a gross abuse of discretion. See *Dougherty County v. Webb*, 256 Ga. 474, 475-76 (350 SE2d 457) (1986).

Charlock did not have a clear legal right to have the road reopened. Under OCGA § 32-7-2 (b) (1), the Board was authorized to close the road when it determined that the road had "ceased to be used by the public to the extent that no substantial public purpose is served by it." Absent a gross abuse of this discretion a mandamus will not lie to control the conduct of an officer vested with discretion. In other words, the party seeking the mandamus must show that the discretionary closing of the road was arbitrary, capricious, and unreasonable.[1]

---

[1] In closing the road, the Board acted as an administrative body. OCGA § 50-13-19 (h) (6) specifies that in reviewing an administrative decision, the trial court may not substitute its judgment for the Board's on questions of fact, but may reverse if the administrative decision is "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Here, Charlock sought a mandamus, not judicial review of the Board's decision. How-

The function of the Board was to determine whether the road served a substantial public purpose. If the Board determines that a road has ceased to be used by the public to the extent that no substantial public purpose is served by it, then the Board may exercise its discretion to close the road. The function of the trial court in a mandamus action is to decide if the Board's action was a gross abuse of discretion.

We hold that although the public used the road to some extent, the Board's decision to close the road did not amount to a gross abuse of its discretion. The Board's decision was supported by the fact that the road was used for illegal purposes, and was winding, steep and hazardous. We therefore reverse the trial court's order granting the injunction and mandamus. The Board's decision remains in force.

2. In our view, OCGA § 32-7-2 (b) (1) requires merely that notice be given before a road is declared abandoned. Lack of proper notice is not a ground for granting a petitioner in mandamus the ultimate relief of ordering a road reopened. Charlock sought an order to compel the road reopened, not an order to compel notice. Even if an order to compel notice had been warranted, Charlock is not entitled to a judgment ordering the road reopened.

*Judgment reversed. All the Justices concur.*

DECIDED NOVEMBER 23, 1988 — RECONSIDERATION DENIED
DECEMBER 14, 1988.

*Winship E. Rees,* for appellants.

*Hurt, Richardson, Garner, Todd & Cadenhead, Pierre Howard, Jr., James D. Comeford, G. Gibson Dean II,* for appellees.

---

ever, the same standard of review applies. The trial court must affirm the Board's decision unless the Board acted arbitrarily, capriciously, and unreasonably.

This is the same standard of review required in constitutional due process analysis. See, e.g., *Barrett v. Hamby,* 235 Ga. 262, 265 (219 SE2d 399) (1975); *City of Atlanta v. Wansley Moving &c. Co.,* 245 Ga. 794, 796 (267 SE2d 234) (1980). Whether the Board abused its discretion is a question of law. Therefore, the trial court's determination is freely reviewable by this court.