S90A0678, S90A0771. GLASS et al. v. CARNES et al. (two cases).
S90A0679. CHARLOCK INVESTMENTS (USA), INC. v. CARNES et al.
(398 SE2d 7)

FLETCHER, Justice.

This is a continuation of *Carnes v. Charlock Investments (USA), Inc.*, 258 Ga. 771 (373 SE2d 742) (1988).

*Preliminary Facts*

In 1987, appellant Charlock Investments, Inc. filed suit seeking to enjoin the Gwinnett County Board of Commissioners from closing a portion of Settles Bridge Road which traverses property owned by appellees Emily Rees Carnes and Frances Rees.

Appellees' property is known as the Rees farm. Charlock owns property abutting Settles Bridge Road, which adjoins the north side of the Rees farm. Charlock intends to develop its property for residential purposes. Although Charlock uses Settles. Bridge Road as a means of ingress and egress to its property, the closing of that portion of the road which traverses the Rees farm does not deprive Charlock access to its property by means of other existing county roads.

In regard to the closing of a section of a county road, OCGA § 32-7-2 (b) (1) provides:

> When it is determined that a section of the county road system has for any reason ceased to be used by the public to the extent that no substantial public purpose is served by it, the county . . . after notice to property owners located thereon, may declare that section of the county road system abandoned. . . .

Finding that notice of the closing of the road had not been given to Charlock and that the road continued to serve a substantial public purpose, the trial court in 1988 ordered the road reopened. On appeal, this Court reversed, holding that under the facts of the case the superior court was not authorized to substitute its judgment for that of the Board on the question of whether the road continued to serve a substantial public purpose. This Court also held that Charlock sought an order to compel the road to be reopened and not an order to compel notice, and "[e]ven if an order to compel notice had been warranted, Charlock is not entitled to a judgment ordering the road reopened." 258 Ga. at 773. "The Board's decision [to close the road] remains in force." Id.

Following this Court's decision in *Carnes*, the Board voted to reopen Settles Bridge Road. Appellees instituted this suit to enjoin the Board from taking such action. Appellant Charlock and appellants Sherwin and Sandra Glass were allowed to intervene in this suit as party defendants. The Glasses' residence is situated on a tract of land abutting the Rees farm on its western boundary, and they contend that under the deeds within their chain of title they have an express appurtenant easement over the portion of Settles Bridge Road that traverses appellees' property. For various reasons, Charlock argues that the county had fee-simple title to the road and was entitled to

reopen it.

## *Evidence*

A bench trial was held, and the following facts were established:

The contested portion of Settles Bridge Road lies in the eastern half of Land Lot 285 of the 7th Land District. On March 30, 1892, Mrs. E. P. Knox conveyed the entire land lot to Henry Strickland.

On August 9, 1892, Strickland conveyed property including the eastern portion of the land lot to Elizabeth Sudderth, who is appellees' predecessor-in-title. A recital in this deed conveyed to the grantee "a good and sufficient right of way for roads to river fractions where the present road is and is to give others right of way to their fractions over the same road or continuations of the same." The river referred to in this deed is the Chattahoochee River.

On August 25, 1892, Strickland conveyed property including the western portion of the land lot to Abi Wheeler, who is the Glasses' predecessor-in-title. A recital in that deed gives Wheeler, her heirs, and assigns "a good and sufficient right of way for road to river fractions over the same road, or a continuation of the same."

On January 15, 1926, the administrator of the estate of Elizabeth Sudderth conveyed the eastern portion of the land lot to H. A. Moore. The deed recites that the property had been surveyed by the county surveyor in March 1892 and that a plat prepared pursuant to this survey was recorded in the clerk's office. A handwritten recital in the margin of the deed, after being corrected for obvious scrivener's errors, conveyed to the grantee "a good and sufficient right of way for road to river fractions where the road was on August 9, 1892," and gave "others right of way to their fractions over the same road or continuation of same as specified in the deed from Henry Strickland to Abi Wheeler."

After 1926, there are no recitals in the deeds within the Glasses' chain of title referring to roadway easements.

The property currently owned by appellees was conveyed by Dr. Donovan Jones to Arthur F. Rees IV, on April 8, 1968. The deed referred to a 1954 plat showing the eastern half of Land Lot 285, and it designated as a public road running in a north-south direction an area which other plats show to be Settles Bridge Road; it also designated a public road extending in a westerly direction from the north-south public road. The property lying within this area is excepted from the conveyance under the following recital in the deed: "Less and except that portion of the above-described property lying within the right of way lines of any public road located on said property."

Settles Bridge Road had been used as a public road since at least 1955. It is the only road in Land Lot 285 which runs in a northerly direction to the Chattahoochee River. Hutchins Ferry Road runs in a

northeasterly direction from the Glasses' property through the Rees farm where it intersects Settles Bridge Road. The road identified as Hutchins Ferry Road has also been known as Hutchins Farm Road, and the names appear to be used interchangeably. The Glasses use Hutchins Ferry Road/Settles Bridge Road as the only existing access to their home, although their larger tract does have frontage on a public road which is more than one-half mile from their home.

Two experts testified on behalf of the appellants that the deeds within the Glasses' chain of title expressly grant them an appurtenant easement over appellees' property.

One expert, Sidney Calloway, testified on behalf of Charlock that the county had acquired fee-simple title to the roadbed, in that there had been a dedication of the road for public use and the roadbed had been excepted from the conveyance to Rees by Donovan under a "less and except" clause in their deed. Where, as here, a road is established by dedication and there is no express grant of fee-simple title, an easement results. The "less and except" clause merely recognized the existence of this easement.

Calloway also testified that based upon his examination of plats of the property and the deeds in appellees' chain of title, as well as tax maps, there is only one road on the appellees' property which runs in a northerly direction to the Chattahoochee River and which could, therefore, be the easement referred to in the earlier deeds in the chain of title of both appellees' property and the Glasses' property, that being Settles Bridge Road. However, he could not testify unequivocally that the road was in existence in 1926.

There is also a road known as Moore Road, which lies south of Hutchins Ferry Road and runs in a direction roughly parallel to its northerly leg, intersecting Settles Bridge Road south of the Rees farm. In Land Lot 284, which is contiguous to the western boundary of Land Lot 285, Hutchins Ferry Road makes a ninety degree turn to the left extending south to where it formerly intersected Moore Road. Although Calloway testified on cross-examination that he could not be sure whether Hutchins Farm Road was the roadway referred to in the parties' deeds, we find no evidence that it traversed the subject property running therefrom to the river.

Danny Bailey, the expert on behalf of the Glasses, testified that he had examined the deeds within the appellees' and the Glasses' respective chains of title, as well as recorded plats. He stated that two plats — a 1926 plat of the western portion of Land Lot 285 which reveals the location of then existing roadways in that portion of the land lot, as well as the 1954 plat referred to in the 1968 deed from Jones to Rees which shows the eastern portion of Land Lot 285 and the location of roadways in that portion of the land lot, the roadways on both plats lining up in such manner as to indicate a continuation

of the same roadways or easements — provided a key to the location of the easement referred to in the deeds in the parties' chains of title. Bailey opined that these two plats "put the puzzle together" and established the location of the easement as the present location of Settles Bridge Road.

On cross-examination, Bailey testified that he did not, in fact, know whether Settles Bridge Road existed in 1926, as he was not then in life. Based upon this testimony, counsel sought to have Bailey admit on cross-examination that the Glasses' easement could have been located upon a road previously known as Hutchins Farm Road. Based upon our examination of the transcript, it does not appear that Bailey answered that question in the affirmative.

### Trial Court's Order

The trial court entered an order finding that the county permanently closed and abandoned the contested portion of Settles Bridge Road. Based upon this finding, the trial court concluded that the county could not reopen the road and that the county's rights in the property reverted to appellees as the abutting property owners. The trial court also found that the only document showing the actual location of the easement referred to in the parties' deeds was the 1892 plat. Since the Glasses failed to introduce this plat in evidence, the court ruled that it could "only surmise that said plat did not show the referenced roads as being located where the disputed section of Settles Bridge Road is now located." In addition, the court found that the disputed portion of Settles Bridge Road is not the only means of ingress and egress to the appellants' properties. For these reasons, the trial court concluded that the Glasses do not have a private easement over the disputed portion of Settles Bridge Road and ruled that the appellants' right to use the road is no greater than that of the general public, whose rights were extinguished by the county's abandonment of the road.

### Appeal

1. OCGA § 32-7-2 (b) (1) expressly states that after a county has abandoned a section of the county road system on the ground that the section of road has ceased to be used by the public to the extent that no substantial public purpose is served by it:

Thereafter, that section of road shall no longer be part of the county road system and the rights of the public in and to the section of road as a public road shall cease.

Consequently, after declaring it abandoned, the County Board of Commissioners was without authority to reopen the road. The fact

that the county did permanently close and abandon the contested portion of the road is an issue that was resolved in the earlier appeal.

2. An owner of land may dedicate the land to public use as a roadway through either an express or implied dedication. Cf. *Dunaway v. Windsor*, 197 Ga. 705 (30 SE2d 627) (1944), with *Ross v. Hall County*, 235 Ga. 309, 311 (219 SE2d 380) (1975).

Unless the governing authority has acquired fee-simple title to the roadway — as through an express grant in a deed or other instrument, see *Wallace v. City of Atlanta*, 228 Ga. 166 (184 SE2d 576) (1971); *Clark v. McBride*, 256 Ga. 308 (1) (348 SE2d 634) (1986), or through condemnation proceedings, see *Sadtler v. City of Atlanta*, 236 Ga. 396 (223 SE2d 819) (1976) — upon abandonment of the road by the governing authorities or by the public, the abutting landowners are presumed to own the fee to the middle of the road, free of the former rights of the general public. *Marietta Chair Co. v. Henderson*, 121 Ga. 399 (3) (49 SE 312) (1904). Gwinnett County did not have an express grant of fee-simple title to the roadway; therefore, upon its abandonment by the county, the abutting landowners, appellees Carnes and Rees, became the presumptive owners of the fee. See generally Ga. Real Est. Law, § 5-16 et seq. (3rd ed.).

3. Where a party has a private easement, either express or implied, over property that through dedication later becomes a public road, vacation or abandonment of the road by a public body, i.e., the county, does not affect the rights of the holder of the private easement. See *Southern R. Co. v. Wages*, 203 Ga. 502 (3) (47 SE2d 501) (1948); *Harris v. Powell*, 177 Ga. 15 (169 SE 355) (1933); *Bayard v. Hargrove*, 45 Ga. 343, 351 (1872); 39A CJS 843, Highways, § 129.

4. The trial court erred in ruling that the Glasses do not have an express easement over the contested portion of Settles Bridge Road.

Where a deed conveying land makes provision for the express grant of an easement, the description of the easement in the deed is sufficient if it provides a key so that the land whereon the easement is located can be identified. *Champion v. Neason*, 220 Ga. 15, 16 (136 SE2d 718) (1964).

It is uncontested that the Glasses hold an express appurtenant easement running from their land over appellees' land and proceeding from there to the Chattahoochee River. The documentary evidence in this case, as interpreted in the expert testimony, establishes a key to the location of the easement and that location is Settles Bridge Road as accessed by Hutchins Ferry Road. There is no evidence of any past or present alternative roadway fitting the description of the easement in the deeds in the parties' respective chains of title.

As previously stated, the trial court rejected appellants' evidence showing the location of the easement as being Settles Bridge Road, on grounds that the 1892 plat is the only document showing the location

of the easement and appellants failed to introduce that plat in evidence. However, the Glasses maintain that the 1892 plat was not introduced in evidence because it shows only the western portion of the land lot and does not show the location of the easement in the eastern portion. In addition, since the 1892 plat was equally accessible to all parties, any presumption that this evidence would be unfavorable or harmful would be equally applicable to all parties. OCGA § 24-4-22; *Eddie Parker Interests v. Booth*, 160 Ga. App. 15, 17 (285 SE2d 753) (1981); *Atlanta Baggage &c. Co. v. Atlanta Taxicabs*, 104 Ga. App. 89 (3) (121 SE2d 175) (1961). This is particularly appropriate where, as here, it is uncontested that the Glasses have an express easement over the appellees' property and the only question for decision is its location.

We hold that the trial court's finding that the Glasses failed to establish the location of the easement was clearly erroneous. *Lamas v. Baldwin*, 140 Ga. App. 37 (1) (230 SE2d 13) (1976) and cits.

5. Since we have held that the Glasses have an express easement in the contested portion of the road, it is unnecessary to resolve the question of whether they are entitled to an implied easement of necessity for ingress and egress to their property.

It does not appear that Charlock has any express or implied easement over the contested portion of the roadway and, in this proceeding, Charlock has not asserted any counterclaim against appellees for condemnation of a private way of necessity.

*Judgment affirmed in Case No. S90A0679. Judgment reversed in Case Nos. S90A0678 and S90A0771. All the Justices concur, except Smith, P. J., who concurs in the judgment only.*

DECIDED NOVEMBER 21, 1990 —
RECONSIDERATION DENIED DECEMBER 19, 1990.

*Arnall, Golden & Gregory, Edward S. Sams, J. Randolph Evans, Michael S. Wakefield,* for appellants (case nos. S89A0678 and S90A0771).

*Smith, Gambrell & Russell,. Leland G. Cook, Thomas E. McCarter,* for appellant (case no. S90A0679).

*Winship E. Rees,* for appellees.