A94A0044. SAWYER et al. v. REHEIS et al.
(445 SE2d 837)

McMURRAY, Presiding Judge.

Harold F. Reheis, Director of the Environmental Protection Division of the Georgia Department of Natural Resources, issued a permit for Early County and the City of Blakely, Georgia, to operate a municipal solid waste landfill. Fred Sawyer, Eric Jarrett, Mack Jarrett, and Richard Coates ("the citizens"), filed a petition pursuant to OCGA § 12-2-2 (c) (2) for administrative review of that decision, alleging that the landfill authorized by the Director's permit was too close to a nearby airport, contrary to criteria established by Rule 391-3-4-.05 (1) (c) (1) of the Rules and Regulations of the State of Georgia ("Rule 5"). Specifically, the citizens point out that Rule 5 provides that "[t]he following criteria must be met for a site proposed as a solid waste handling facility: . . . New [municipal solid waste landfill] units or lateral expansions of existing units shall not be located within 10,000 feet (3,048 meters) of any public-use or private-use airport runway end used by turbojet aircraft or within 5,000 feet (1,524 meters) of any public-use or private-use airport runway end used by only piston-type aircraft." Further, they also show that Rule 5 (1) (c) (2) requires owners and operators of existing landfill units to "demonstrate that the units are designed and operated so that the [landfill] units do not pose a bird hazard to aircraft" and that, for purposes of Airport Safety within the meaning of Rule 5 (1) (c), the term " 'Bird hazard' means an increase in the likelihood of bird/aircraft collisions that may cause damage to the aircraft or injury to its occupants." Rule 5 (1) (c) (5) (iii).

At the evidentiary hearing before an administrative law judge (ALJ), the following undisputed material facts were adduced: Coates owns a small airfield approximately 7,800 feet from the site of the

proposed landfill, from which he operates a crop-dusting business. Coates is not rated by the Federal Aviation Administration to fly a jet. As manufactured, the plane Coates flies was a piston-driven propeller plane. Coates modified it so that now it is a turbine-driven propeller plane, i.e., a turboprop as opposed to a turbojet.

The opinions of aviation engineers differed as to whether the features of a turboprop engine made it more like a "turbojet" or a "piston-type" aircraft. The ALJ found persuasive the distinctions made by Professor John J. Harper, Professor Emeritus of Aerospace Engineering at the Georgia Institute of Technology. Professor Harper deposed that "for the purpose of bird strike protection, the engine design of a turboprop has far more in common with a turbojet than it does with a piston-type propeller driven aircraft." In Professor Harper's opinion, the "engine design on inlet air is the decisive variable which establishes the relative susceptibility of that type of aircraft to catastrophic failure resulting from bird strikes." He concluded that "the large air intake demands of a turboprop are equivalent to the air intake requirements of turbojet and turbofan engines, [and] for the purpose of bird strike protection, the engine design of a turboprop requires the same degree of protection to guard against the interruption of combustion air as is required by the turbojet and other turbine-powered aircraft." The ALJ determined that Coates' turboprop plane subjected the proposed landfill to the more stringent 10,000-foot separation distance required for landfill sites near an airport runway used by turbojet aircraft. Consequently, the ALJ held that Director Reheis improperly issued this permit because the proposed site is too close to Coates' runway.

The Director, Early County, and the City of Blakely, Georgia, appealed this administrative ruling to the superior court. The superior court reversed, ruling that the ALJ's "conclusions of law are beyond his statutory authority; are clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; and are arbitrary and capricious and characterized by an abuse of his discretion and an unwarranted exercise of his discretion." The citizens' application for discretionary appeal was granted and this appeal followed. *Held*:

1. In related enumerations, the citizens contend the superior court erred in reversing the determination of the ALJ, arguing that the court failed to apply the proper standard of review and substituted its own judgment for that of the ALJ.

Judicial review of an administrative decision "shall be conducted by the court without a jury and shall be confined to the record." OCGA § 50-13-19 (g). "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." OCGA § 50-13-19 (h). However, the superior "court may re-

verse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . [i]n violation of constitutional or statutory provisions; . . . [i]n excess of the statutory authority of the agency; . . . [c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or . . . [a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." OCGA § 50-13-19 (h). The "clearly erroneous" standard of review to be applied by the superior court "prevents a de novo determination of evidentiary questions leaving only a determination of whether the facts found by the [ALJ] are supported by 'any evidence.' " *Hall v. Ault*, 240 Ga. 585, 586 (242 SE2d 101). Upon further discretionary appeal to this Court, "our duty is not to review whether the record supports the superior court's decision but whether the record supports the [final] decision of the local governing body or administrative agency. [Cits.]" *Emory Univ. v. Levitas*, 260 Ga. 894, 896 (1), 898 (401 SE2d 691).

In the case sub judice, the opinions of aviation and aerospace engineers were in conflict as to whether a turboprop plane such as Mr. Coates' should be classified as a piston-type plane or as a turbojet under Rule 5. The ALJ found the expert opinion testimony and analysis of Professor Harper to be persuasive. "The presence of conflicting evidence, including dueling experts, is sufficient to satisfy the any evidence standard. *Georgia Real Estate Comm. v. Syfan*, 192 Ga. App. 3, 4 (1) (383 SE2d 605) (1989)." *Ga. Power Co. v. Ga. Pub. Svc. Comm.*, 196 Ga. App. 572, 579 (5), 580 (396 SE2d 562). Consequently, the superior court erred in the case sub judice in concluding that the determination of the ALJ was "[c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record." OCGA § 50-13-19 (h) (5).

2. The citizens next contend that the superior court erred in holding that the ALJ's construction and application of Rule 5 (1) (c) was arbitrary and capricious.

"The [superior] court must affirm the [final administrative] decision unless the [administrative factfinder] acted arbitrarily, capriciously, and unreasonably." *Carnes v. Charlock Investments (USA)*, 258 Ga. 771, 772 (1), n. 1, 773 (373 SE2d 742). "If arbitrary and capricious action is alleged the [superior] court must determine whether a rational basis exists for the decision made. [This] is a question of law. *Georgia Public Svc. Comm.* [*v. Southern Bell*, 254 Ga. 244, 246 (327 SE2d 726)]; *Carnes* [*v. Charlock Investments (USA)*, 258 Ga. 771, 772 (1) n. 1, 773], supra." *Ga. Power Co. v. Ga. Pub. Svc. Comm.*, 196 Ga. App. 572, 579 (5), 581, supra. "[I]n construing administrative rules, 'the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or

inconsistent with the (rule).'" *Atlanta Journal &c. v. Babush*, 257 Ga. 790, 791 (2), 792 (364 SE2d 560).

The ALJ interpreted Rule 5 (1) (c) to apply to all aircraft, for purposes of determining which minimum distance must be maintained between an existing airport runway and a proposed landfill. However, the superior court concluded that this "decision is erroneously based upon the proposition that the engine itself is to provide the criteria for determining which separation rule is applicable. Forcing the term 'engine' into Rule 5's classification 'turbojet aircraft' exceeds the [ALJ's] statutory authority."

Rule 5 broadly distinguishes between "turbojet" aircraft and "piston-type" aircraft. The ALJ applied the technological distinctions recognized by the aeronautical engineering expert, Professor Harper, to the two choices offered by Rule 5 (1) (c) and concluded that, for purposes of distance separation, a turboprop was more akin to a "turbojet" than it was to a "piston-type" aircraft. "That is appropriate. *Greyhound Lines v. Ga. Public Svc. Comm.*, 236 Ga. 76, 77 [(222 SE2d 347)]. The opinions of competent experts may constitute such a rational basis. *Turnbull, Inc. v. United States*, 389 F2d 1007, 1014 (4 & 5) (Ct. Cl. 1967)." *Ga. Power Co. v. Ga. Pub. Svc. Comm.*, 196 Ga. App. 572, 579 (5), 580, supra. By way of contrast to the "rational basis" standard of review, the term " 'arbitrary,' as defined in the Standard Dictionary, means, 'fixed or done capriciously or at pleasure; without adequate determining principle; not founded in the nature of things; non-rational; not done or acting according to reason or judgment; depending on the will alone; absolutely in power; capriciously; tyrannical; despotic.'" *Central of Ga. R. Co. v. Mote*, 131 Ga. 166, 176 (8), 178 (62 SE 164). In the case sub judice, the record demonstrates that the ALJ followed a reasonable thought process in his interpretation of the Rule's technical terms; that he logically applied the goals of the Rule to the facts adduced on the record and that he was guided by expert opinion on the technical matters presented. Contrary to the superior court's determination, this process of reasoning was not in excess of the statutory authority of the ALJ and so OCGA § 50-13-19 (h) (2) does not provide any basis for reversing the final administrative decision. Rather, this was an explanation of the rational basis underlying the ALJ's ultimate determination that the more stringent 10,000-foot minimum separation distance applied to the airport runway used by Coates' turboprop plane. The record demonstrates that the ALJ had a rational basis for his ultimate determination. Accordingly, the superior court was unauthorized to substitute its own judgment for that of the ALJ under the theory that this administrative determination is arbitrary and capricious within the meaning of OCGA § 50-13-19 (h) (6). Consequently, the superior court erred in failing to affirm the final order of the administrative agency. *Carnes v.*

*Charlock Investments (USA)*, 258 Ga. 771, 772 (1), n. 1, 773, supra. *Judgment reversed. Pope, C. J., and Smith, J., concur.*

DECIDED JUNE 30, 1994.

Troutman Sanders, Norman L. Underwood, Howard L. Sharfstein, Hollister A. Hill, for appellants.

Michael J. Bowers, Attorney General, Robert S. Bomar, Senior Assistant Attorney General, Brenda H. Cole, Assistant Attorney General, William H. Mills, E. Tracy Moulton, Jr., for appellees.