## A98A1910. GOLDWIRE v. CLARK.
(507 SE2d 209)

ELDRIDGE, Judge.

After an evidentiary hearing on December 8, 1997, a disciplinary tribunal found Robert C. Clark, Jr., guilty of a violation of Rule 1 (d) of the Code of Student Discipline and Conduct for his participation in

making a telephone call regarding a bomb at Effingham County High School. The Effingham County School Board adopted the tribunal's findings, expelled Clark for the remainder of the 1997-1998 school year, and put him on permanent probation.

On petition for certiorari in the Superior Court of Effingham County, the reviewing court found that "there is insufficient evidence to support the verdict of the disciplinary tribunal and the Effingham County School Board." The superior court remanded the case for a new trial. However, the court certified its decision for immediate appellate review. We granted interlocutory appeal in order to examine the application of the Rules of the Code of Student Conduct and Discipline to the evidence adduced at the evidentiary hearing. In so doing, we affirm the decision of the Superior Court of Effingham County.

The evidence presented at the hearing showed that five boys, Caleb V., Chris H., Francis T., Matthew B., and appellee Robert Clark, regularly got together during lunch period at the high school.

On November 17, 1997, during the Monday lunch period, the boys "were kind of hinting towards maybe calling in a bomb threat so we could get out of school for a little while."

On Tuesday during lunch period, Caleb V. was absent. The remaining boys "walked down to the phones and Francis [T.] called 911 and told them that Trey Parrish had hemorrhoids, and then he hung up, and then we walked on back to the lunchroom."

On Wednesday during second period health class, two hours prior to lunch, Robert Clark told a substitute teacher about the bomb threat: "[T]en minutes into the class one of the students decided that he was going to just right in the middle of class blurt out to me what was going to happen that day, and I quote, 'Ms. Davis, we're going to have a bomb threat today.' And I turned around and looked at the student, and I said, 'Oh, yeah, right, Robby [Robert Clark], just sit there and be quiet until the roll is taken.'" The teacher decided to "just shrug[ ] it off."

The evidence showed that while Robert Clark was part of the group that on Monday discussed calling 911 regarding a bomb at the high school, "we were all laughing and I [Clark] thought it was a joke." When "the same group of individuals continued the discussion to call 911 in regards to a bomb threat" on Wednesday, Clark was not sure if the bomb threat would be accomplished. "They decided about it, but I didn't know if they would do it or not. I still thought they were joking."

After the discussion among the group on Wednesday, Robert Clark went to sit with another group of friends. Shortly thereafter, Caleb V., Matthew B., and Chris H. got up from the lunch table and walked toward the telephones near the high school's office. The boys

motioned for Robert Clark to join them. He did. Robert Clark "assumed that they were walking to the phone to call a bomb threat to 911 . . . but I wasn't quite sure because we always walk that way."

Clark stood near the telephones. Caleb V. made the call to 911. Caleb V. told the police that there was a bomb at South Effingham High School. Matthew B. and Chris H. were also at the telephone. Clark could not hear what was said on the telephone, but he "assume[d] that when they were at the phones that they were calling 911[.]" On Clark's walk back to class after lunch, "Chris H. run up behind me and told me that we had just called 911." The school was evacuated as a result of the bomb threat.

Later, Caleb V. made the following statement to the police: "I was asked to make the phone call on Monday but I didn't. I don't know why they asked me, I guess it is b/c they were too chicken themselves. They didn't say nothing Tues. b/c I was not at school, when I got back Weds. they kept asking me to do it again so finally I did[.] I don't care what any body thinks but as far as I am concerned they are as guilty as I am."

Caleb V. was the sole inculpatory witness against Clark at the hearing. Caleb V. stated that when he went to the telephone to make the 911 call, Robert Clark was with him. The substance of Caleb V.'s inculpatory testimony against Clark is as follows: "[Q:] Who asked you to make the phone call on Monday? [A:] Well, no one person in particular, but it was all the people that were around me [names the four other boys including Clark]. [Q:] Was [Clark] ever any part of the telephone conversation and did he ever discuss anything with you as to what would be said? . . . [A:] Well, he was saying why you don't do it or something like that. [Q:] You don't know what he said, do you, for sure? [A:] I know he was there. [Q:] But did he participate in it to your knowledge? [A:] He didn't make the phone call, but he was there. . . . [Q:] Do you know anything that he said specifically? [A:] He was kind of encouraging me to make the phone call. [Q:] Do you remember anything about the words he might have said? [A:] No. . . . [Q:] Caleb, there is no doubt in your mind that Robby was encouraging you to make this call, is there? [A:] No. [Q:] And that he was with you at the time you made the call? [A:] Yes." *Held*:

1. "The appropriate standard of review to be applied to issues of fact on writ of certiorari to the superior court is whether the decision below was supported by any evidence. On appeal to this Court, our duty is not to review whether the record supports the superior court's decision but whether the record supports the *initial* decision of the local governing body or administrative agency." (Citations and punctuation omitted; emphasis supplied.) *City of Atlanta v. Smith*, 228 Ga. App. 864, 865 (493 SE2d 51) (1997).

Appellant Goldwire asserts that the superior court failed to

apply the above "any evidence" standard to its review of the School Board's administrative decision, and that under such standard, the evidence was sufficient to uphold the Board's determination. In his brief, appellant states that sufficient favorable evidence to support the School Board's decision is shown as follows:

"There is certainly 'substantial' (some) evidence to support the tribunal decision in this case. The Student's own attorney admitted in judicio that there was 'conflicting evidence' as to what part the Petitioner played in the bomb scare. The presence of 'conflicting evidence' is sufficient to satisfy the any evidence standard. *Sawyer v. Reheis*, 213 Ga. App. 727, 729 (445 SE2d 837) (1994). Although the Student disclaimed any participation in making the actual 911 call on Wednesday, he did admit on the stand that he was part of the group that started talking about making the bomb threat on the preceding Monday and Tuesday. Caleb V., the student who made the actual 911 call, positively testified that the Student was encouraging him to make the call and that the Student was there at the time that Caleb V. made the call. During questioning, the Student admitted that he had been having lunch with Caleb V., Chris H. and Matthew B. just before the phone call, that he was walking right behind Caleb V. when he and the others made their way to the telephone to make the 911 call and that he saw them at the telephone." (Citations omitted.)[1]

For the following reasons, even when taking the evidence in a light most favorable to upholding the School Board's determination, i.e., as stated above by a representative of the School Board, we find that such evidence is insufficient to demonstrate a violation of Rule 1 (d) of the Code of Student Conduct and Discipline.

(a) There was no "admission in judicio."

After the tribunal had found Clark guilty, Clark's attorney made a plea for leniency in sentencing: "This man — young man has been taught a lesson and I hate to see him lose a school year. . . . He didn't participate in this to the point that he made the telephone call. He told them no, and he did tell the teacher, and there is conflicting evidence as to what part he played, even by the ones that did play the part."

---

[1] Appellant also asserts that testimony by Matthew B. that Clark was at the telephone with Caleb V. should be considered by this Court under the "any evidence" analysis. However, the record shows that Matthew B. testified that he had no personal knowledge of whether Robert Clark was at the telephones with Caleb V.: "I don't know who was down there [the telephones], but that's what everybody told me, Caleb and everybody told me." The testimony of Caleb V. is before us on this subject. What "everybody else" may have said is hearsay with no probative value. Further, Clark admitted that he followed Caleb V. and stood near the telephones during the 911 call. Accordingly, we will assign no independent value to the testimony of Matthew B.

The attorney's argument to the tribunal is not an "admission in judicio." "Judicial admissions are those made in court by a person's attorney for the purpose of being used as a substitute for the regular legal evidence of the facts at the trial." Black's Law Dictionary, 6th ed., p. 48. Here, the attorney's argument that "the facts are conflicting" does not establish the existence of any fact, conflicting or otherwise, so as to satisfy the "any evidence" standard pursuant to the case cited by appellant, *Sawyer v. Reheis*, supra. Indeed, it would make for an interesting change in the law if attorneys were held to statements made during persuasive argument as solemn "admissions in judicio."

(b) Caleb V.'s testimony that Robert Clark "encouraged" him to call 911 is a conclusion, i.e., opinion testimony, for which no factual basis was provided.

In order to establish "any evidence" to uphold the findings of the School Board, appellant relies almost exclusively upon Caleb V.'s testimony that "[Clark] was kind of encouraging me to make the phone call" and Caleb V.'s response of "No" to the prosecutor's question, "Caleb, there is no doubt in your mind that Robby was encouraging you to make this call, is there?" However, whether Clark's actions constituted "encouragement" is purely Caleb V.'s conclusion, i.e., opinion, based upon Clark's actions.

Generally, "opinions are admissible as long as the witness recites the facts on which his opinion is based. OCGA § 24-9-65." *Peterson v. RTM Mid-America*, 209 Ga. App. 691, 692 (434 SE2d 521) (1993).

Thus, while Caleb V.'s opinion would be admissible, on review the question is whether there is "any evidence" of fact that *supports* Caleb V.'s conclusion that Clark's conduct "encouraged" him to make the 911 call. The record is devoid of such evidence.

Caleb V. did not testify as to what Clark *said* that was "encouraging" and specifically testified that he "[did not] remember anything about the words [Clark] might have said." Caleb V. did not testify as to what Clark *did* that encouraged him to make the call. There was no testimony that Clark gave him money to make the call, dialed the phone number, was ever part of the telephone conversation, or ever discussed anything about what should be said. Caleb V. could not testify that Clark specifically asked him to make the call; he testified that it was "no one in particular" who urged the call except "all the people that were around me," of which Clark was simply one. The essence of Caleb V.'s testimony regarding Clark was that "he [Clark] was there."

Accordingly, even under an "any evidence" standard of review, there is no *factual* basis by which a reviewing court might determine that Clark, specifically, "encouraged" Caleb V. to call 911 and report

a bomb at the high school.

(c) "Knowledge" and "presence" are insufficient to demonstrate a violation of Rule 1 (d) of the Code of Student Conduct and Discipline.

The remaining evidence upon which the School Board relies is Robert Clark's testimony wherein he "admitted on the stand that he was part of the group that started talking about making the bomb threat," i.e., knowledge, and that "he was walking right behind Caleb V. when he and the others made their way to the telephone to make the 911 call and [ ] saw them at the telephone," i.e., presence.

However, Clark was charged with the violation of Rule 1 (d) of the South Effingham High School Code of Student Conduct and Discipline. Rule 1 states as follows:

"No student shall:

"(a.) *Block* any entrance, *occupy* any school building, *prevent* any class or function from taking place, *prevent* any student, guest, or employee from using facilities, or *block* any normal pedestrian or vehicular traffic or otherwise *deprive* others of free access to, or use of, any facility, program or activity associated with the Effingham County Schools.

"(b.) *Set* fire to or in any school buildings or property.

"(b.1.) *Cause* a false alarm.

"(c.) Continually and intentionally *make* noise or *act* in any other manner as to interfere seriously with the teacher's ability to conduct class.

"(d.) In any other manner, by *the use* of violence, force, noise, coercion, threat, intimidation, fear, passive resistance, or any other *conduct*, intentionally *cause the disruption* of any lawful mission, process or function of the school, or *engage in any such conduct* for the purpose of *causing* the disruption or obstruction of any such lawful mission, process or function." (Emphasis supplied.)

Clearly, Rule 1, including subsection (d), requires *conduct* that actually *causes* the disruption of the school. The Rule was designed to reach the actor or actors who *cause* the disruption. There is no provision under the Rule that reaches mere knowledge and presence.

Further, to the extent that Rule 1 (d) can be expanded to reach a student who "aids and abets" a "main actor" such as Caleb V., under the language of the Rule, such student still must *engage in conduct* the purpose of which is to make an affirmative step toward aiding the main actor in the commission of the prohibited act, i.e., the disruption of the school. The Rule does not in any fashion address passive conduct, idle spectators, or bystanders. And perhaps rightly so in these days of "zero tolerance."

There is wisdom behind the forging of rules that recognize the foibles of youth and the special environment that is high school. Rule 1 of the Student Code of Conduct and Discipline appears to be such a

rule. A rule that requires an element of *active conduct* wisely recognizes that a school environment is a special one. It is a close society where many students have "knowledge" of possible events simply by virtue of their participation in school and interaction with other students. Such a rule recognizes that young adults are just that — young — and a teen's ability to threaten unwise action, dare, boast, and brag at the lunch tables is part of that youth. The rule recognizes that the ones who *actively participate* in carrying out the act, or the ones who *actively* force, threaten, coerce, or intimidate another to carry out the act are the ones who violate the rule, the results of which violation provides the lesson as to the consequences of following through on what otherwise would be a mere threat of unwise action, a dare, a boast, or a brag. Thus, without evidence to satisfy the element of "active conduct," a violation of the rule is not shown. Here, the record does not contain such evidence.

We wish to make it clear that by our decision, this Court does not condone or trivialize in any way the actions on the part of any person that led to the November 19, 1997 bomb threat and evacuation of South Effingham High School. Neither do we pass on the credibility of any of the witnesses that appeared before the disciplinary tribunal or upon the possibility that Clark violated some other school rule or policy through his actions. We hold only that the record upon which the School Board relies does not demonstrate that Clark engaged in "*conduct* that intentionally *cause[d]* the disruption" of school in violation of Rule 1 (d) of the Code of Student Conduct and Discipline. The Rule does not address passive conduct, which is what the evidence showed in the instant case. Accordingly, even under the "any evidence" standard of review, the evidence is insufficient to support the verdict of the disciplinary tribunal and the Effingham County School Board.

2. The superior court was incorrect in determining that there "are issues of fact involved," simply because the "facts" did not support the tribunal's verdict. Here, there are no issues of fact. A verdict premised on insufficient evidence is error as a matter of law. See, e.g., *Lister v. Scriver*, 216 Ga. App. 741, 744 (456 SE2d 83) (1995).

The trial court was correct, however, in remanding this case for further disposition in light of the high school's rules and regulations. Accordingly, we remand this case to the Superior Court of Effingham County with instructions to remand the case to the Effingham County School Board for a decision not inconsistent with this opinion and for disposition of this case in adherence with the School Board's policies and procedures. *Lamb v. Tanner*, 178 Ga. App. 740 (344 SE2d 534) (1986); *Johnson v. Pulaski County Bd. of Ed.*, 231 Ga. App. 576, 579 (499 SE2d 345) (1998).

*Judgment of the superior court is affirmed. Case remanded for*

*further disposition not inconsistent with this opinion. McMurray, P. J., and Blackburn, J., concur.*

DECIDED SEPTEMBER 18, 1998 —
RECONSIDERATION DENIED SEPTEMBER 30, 1998.

*Brennan, Harris & Rominger, Richard J. Harris, James D. Kreyenbuhl*, for appellant.
*Ronald K. Thompson*, for appellee.