A00A2307. CHURCH OF THE NATIVITY, INC. v. WHITENER
et al.
(547 SE2d 587)

PHIPPS, Judge.

This is a dispute over the ownership of an easement traversing a tract of land belonging to the Church of the Nativity, Inc. ("the Church"). The easement connects an adjacent roadway with another tract, owned by Michael and Glenda Whitener, that adjoins the Church's property. The trial court ruled that the Whiteners have valid title to the easement and that the Church committed laches by failing to timely assert its claim to the land. The court entered an interlocutory injunction prohibiting the Church from obstructing the Whiteners' use of the easement. The Church appeals, asserting that the court improperly granted complete relief to the Whiteners, that the Whiteners do not have a valid easement, and that the Church was not guilty of laches. Because the trial court did not abuse its discretion in issuing the injunction,[1] we affirm.

From December 1968 to March 1974, the Protestant Episcopal Church of the Atlanta Diocese ("the Diocese") owned both the six-acre tract that the Church now owns and the adjacent eighteen-acre parcel that the Whiteners now own. On March 29, 1974, the Diocese executed a deed conveying the larger tract to Allstate Industries, Inc. and a deed conveying the smaller tract to the Church. The deed to Allstate stated that the conveyance included "an easement 40-feet in width (said easement to be used only as a public street or road after dedication as such by the City of Fort Oglethorpe, Georgia) leading from . . . South Cross Street to [Allstate's tract] across the south 40 feet of the property of [the Church]." The deed to the Church did not mention this easement. Allstate's deed was recorded on April 2, 1974,

---

[1] We review a trial court's grant of an injunction, whether interlocutory or permanent, for manifest abuse of discretion. *Teachers' Retirement System &c. v. Forehand*, 234 Ga. App. 437, 438 (506 SE2d 913) (1998); *Chambers v. Peach County*, 268 Ga. 672, 673 (1) (492 SE2d 191) (1997).

and the Church's deed was recorded two days later.

In 1976, Allstate conveyed a portion of its 18-acre tract to Robert and Louise Roberts via warranty deed, and in 1979, Allstate conveyed the remainder of the tract to the Robertses via a second warranty deed. Neither deed referred to the easement over the Church's property. In 1989, Allstate executed a third warranty deed conveying the easement, alone, to the Robertses. In 1996, Louise Roberts executed a warranty deed conveying to Sweet City Properties, Inc. all of the land that the Robertses had acquired from Allstate, including the easement over the Church's property. In 1997, Sweet City Properties executed a warranty deed transferring the entire 18-acre parcel, including the easement, to the Whiteners.

In May or June 1998, the Whiteners began building a dirt roadway on the easement. In April 1999, the Church notified the Whiteners that it owned the land in question, and the Whiteners ceased work on the roadway. They then sued the Church for declaratory and injunctive relief.

After a hearing, the trial court issued an order finding that the Whiteners have valid title to the easement. The court rejected the Church's arguments that the easement had been abandoned, that the Church had acquired it by adverse possession, and that the Whiteners had failed to comply with the requirement that it be used only as a public road. Finally, the court ruled that the Church lost any claim to the easement by failing to timely assert its rights after the Whiteners began development.

1. The Church argues that the trial court "changed the status quo of the parties completely, and afforded [the Whiteners] all of the relief requested." However, the Church cites no authority for the proposition that the nature of the relief granted by the trial court was procedurally improper.[2] We find no error.

2. The Church asserts that the trial court erred in ruling that the Whiteners' deed took priority over the Church's deed. Again, we disagree.

OCGA § 44-2-2 (b) states in pertinent part that "[d]eeds . . . which are against the interests of third parties who have acquired a transfer . . . binding the same property and who are acting in good faith and without notice shall take effect only from the time they are

---

[2] The Church relies on *Dolinger v. Driver*, 269 Ga. 141, 142 (1) (498 SE2d 252) (1998), in which our Supreme Court held that an order granting injunctive relief is directly appealable if it follows a lengthy adversary hearing and grants the plaintiff all the relief requested, even if the order is styled as a temporary restraining order. *Dolinger* has no application here.

filed for record in the clerk's office." Construing predecessors to this statute, Georgia courts have held that

> [o]mitting the matter of notice, as against each other, competing deeds are effective only from and after being filed for record. . . . [I]n a contest between deeds upon a valuable consideration, from the same grantor, conveying the same property, such deeds, as against each other, where taken without notice, will take priority only from and after the date of lawful record or filing for record. . . .[3]

The trial court reasoned that Allstate's 1974 deed from the Diocese, which created the easement, took priority over the Church's contemporaneous deed because Allstate's deed was recorded first. Thus, the court concluded, the Church's property is burdened by the easement even though its deed does not mention it.

(a) The Church maintains that Allstate's deed does not have priority because Allstate was on notice when it took the deed that the Church had been conveyed its property free of the easement. The Church claims that Allstate's deed refers to the Church's 1974 deed from the Diocese. This argument is without merit.

The reference in Allstate's deed is to a deed dated December 2, 1968, in which the Church previously acquired the six-acre tract it now owns. On December 6, 1968, the Church reconveyed the tract to the Diocese. The Diocese then owned the six-acre tract, as well as the eighteen-acre tract, until it conveyed the six-acre tract back to the Church in 1974. Thus, the reference in Allstate's deed proves only that Allstate knew the Church had owned the six-acre tract six years earlier. There is no evidence that Allstate knew, when it took the 1974 deed from the Diocese, that the Church's contemporaneous deed from their common grantor failed to mention the newly created easement.

(b) The Church also argues that, even if Allstate's 1974 deed created a valid easement, Allstate never successfully conveyed the easement to the Robertses, thus breaking the chain of title. Specifically, the Church asserts that the easement "went out of existence" when Allstate sold the 18-acre tract to the Robertses via the 1976 and 1979 warranty deeds because those deeds did not mention the easement. We reject this argument.

Under Georgia law, "an easement appurtenant created by deed passes with the dominant estate, although the conveyance thereof

[3] *Wadley Lumber Co. v. Lott,* 130 Ga. 135, 141 (2) (60 SE 836) (1908); see also *Fourth Nat. Bank of Columbus v. Howell,* 92 Ga. App. 868, 876 (2) (90 SE2d 78) (1955).

may not have expressly mentioned the easement."[4] "An easement is appurtenant when the easement is created to benefit the possessor of the land in his use of the land."[5] An easement in gross, by contrast, is "a mere personal right in the land of another."[6] Rights of ingress and egress over land generally are construed as appurtenant easements.[7] The easement in this case is appurtenant, as it was expressly intended to provide public road access from the 18-acre tract to Cross Street. Accordingly, the easement automatically passed to the Robertses when Allstate sold them the benefitted land, even though the 1976 and 1979 deeds did not mention the easement.

3. The 1974 deed from the Diocese to Allstate creating the easement states that it may be used "only as a public street or road after dedication as such by the City of Fort Oglethorpe." The Church argues that the trial court erred "in finding that the Whiteners did not need to meet" this condition. But the court made no such finding. Rather, it found that the Whiteners intend to build the road to the city's specifications and that, if they do so, the city will accept the road as a public street one year after construction is complete. Thus, the court concluded that the Whiteners have "initiated a process whereby the property will be dedicated to the city of Fort Oglethorpe as a public road." As the Church has not shown that the court's findings are clearly erroneous,[8] this enumeration lacks merit.

4. The Church argues that even if Allstate's deed containing the easement was valid, the Church acquired title to the easement by adverse possession.

To acquire title by adverse possession, a claimant must show "public, continuous, exclusive, uninterrupted, and peaceable" possession of the property for twenty years, or for seven years under color of title.[9] Such possession is shown by "inclosure, cultivation, or any use and occupation [of the land] which is so notorious as to attract the attention of every adverse claimant, and so exclusive as to prevent actual occupation by another."[10] A claimant alleging title by adverse possession bears the burden of proving it.[11]

In this case, the trial court found that, from 1980 to 1998, the Church never fenced, mowed, cleared, improved, or in any way used

---

[4] (Citation omitted.) *O'Barr v. Duncan*, 187 Ga. 642 (2) (2 SE2d 82) (1939); see also *Atkinson v. Drake*, 101 Ga. App. 485, 487 (114 SE2d 213) (1960).

[5] *Yaali, Ltd. v. Barnes & Noble, Inc.*, 269 Ga. 695, 697 (3) (506 SE2d 116) (1998).

[6] (Citation omitted.) *Stovall v. Coggins Granite Co.*, 116 Ga. 376, 378 (42 SE 723) (1902).

[7] *Yaali, Ltd.*, supra at 698.

[8] See OCGA § 9-11-52 (a).

[9] *Proctor v. Heirs of Jernigan*, 273 Ga. 29 (1) (538 SE2d 36) (2000).

[10] (Citation and punctuation omitted.) *Cheek v. Wainwright*, 246 Ga. 171, 172 (1) (269 SE2d 443) (1980); see also *Ga. Power Co. v. Irvin*, 267 Ga. 760, 764 (1) (b) (482 SE2d 362) (1997).

[11] *Lindsey v. Lindsey*, 249 Ga. 832, 833 (249 SE2d 512) (1982).

the forty-foot strip of land in question, except that Church representatives cleared trash from it two or three times a year.[12] Thus, the court concluded that even though the Church owned the tract of land on which the easement was located, the Church did nothing "which would put the owner of the easement on notice that [the Church] was in possession of the easement adverse to the owner's rights." Hence the Church failed to prove that it possessed the easement in a manner "so notorious as to attract the attention of every adverse claimant, and so exclusive as to prevent actual occupation by another."

The Church argues that it maintained a wooded border around its property for aesthetic purposes and that this use was sufficient to establish adverse possession. But there was no evidence that the Church planted any trees on the strip of land in question. While the deliberate creation of a wooded border on the property might have constituted possession inconsistent with the presence of a roadway easement, the trial court was entitled to presume that the trees had been there since the establishment of the easement. Accordingly, the trial court did not err in concluding that the Church failed to establish the type of possession necessary to acquire the land by prescription.

The Church also argues that its occupation of part of its six-acre tract was sufficient to put others on notice that it occupied the whole tract, including the easement. The Church cites OCGA § 44-5-166 (a), which states that a person who has paper title to a tract of land but actually possesses only part of it is deemed to have constructive possession of the entire tract. However, that rule does not apply where, as here, a disputed piece of land is included in the deeds of two adjacent landowners.[13] Because the Church's deed conveyed the entire six-acre tract unburdened by any easement, but Allstate's deed created an express easement over the Church's property, no inference of possession arises in favor of the Church.

5. The Church asserts that the easement was abandoned because it was not used from the date of its creation in 1974 until the Whiteners began to build the roadway in 1998. However, nonuse of an express easement does not constitute abandonment, in the absence of other evidence of an intent to abandon.[14] The trial court found that the Whiteners' predecessors in title had no intent to abandon the easement, and the Church fails to show that this finding was

---

[12] There was no evidence as to whether the Church used the land in any way before 1980.

[13] See OCGA § 44-5-166 (b); *Atlanta &c. R. Co. v. Colbert*, 171 Ga. 196, 199 (154 SE 909) (1930); *Robertson v. Abernathy*, 192 Ga. 694, 698-699 (5) (16 SE2d 584) (1941).

[14] *Smith v. Gwinnett County*, 248 Ga. 882, 884 (2) (a) (286 SE2d 739) (1982); *Gilbert v. Reynolds*, 233 Ga. 488, 493 (212 SE2d 332) (1975).

clearly erroneous. Accordingly, the trial court did not abuse its discretion in ruling that the easement was not abandoned.

6. The Church also charges the trial court with error in finding it guilty of laches. Because the trial court ruled that the Church had no legal claim to the easement, it was not necessary to determine whether the Church's claim was barred by the equitable doctrine of laches.[15] We therefore do not address this issue.

*Judgment affirmed. Johnson, P. J., and Smith, P. J., concur.*

DECIDED MARCH 7, 2001 —
RECONSIDERATION DENIED APRIL 9, 2001.

*Davis & Kreitzer, John W. Davis, Jr., William M. Phillips*, for appellant.
*Clifton M. Patty, Jr.*, for appellees.

---

[15] See *City of Dalton v. Carroll*, 271 Ga. 1 (515 SE2d 144) (1999) ("Laches is principally a question of the inequity in allowing a claim to be enforced.") (footnote omitted).