### S02A0742. DYER v. DYER.
#### (566 SE2d 665)

HINES, Justice.

This is an appeal by co-executor Roger Dyer from the superior court's construction of certain provisions of the last will and testament of his mother, Emma Linda Dyer. For the reasons which follow, we affirm.

Worth Dyer and his wife, Emma Linda Dyer, executed a joint will dated June 4, 1981. Worth died in 1981, Emma on September 20, 1999. Roger and Sonny Dyer, sons of the decedents, were named co-executors of the estate.[1] In June 2000, Roger Dyer, as co-executor, filed a "Petition for the Construction of a Will" in the Superior Court of Union County. The petition asked the Court to interpret Items Four and Five of the will regarding the disposition of the real property owned by Emma Dyer at her death. A survey of the real property showed three tracts: Tract One consisting of 5.67 acres; Tract Two consisting of 1.15 acres and containing a one-story brick home, garden area, and asphalt drive; and Tract Three consisting of 65.34 acres.

The following provisions of the will were at issue:

### *ITEM FOUR*

Upon the death of the Survivor, we will, devise and bequeath to our son, SONNY DYER, our farm and homeplace. However, it is our express desire that this farm and homeplace not be sold, but is to stay in the Worth Dyer family. In the event he should at any time desire to sell this property, he is to sell it to one of my male heirs at the amount for which property is selling for at that time. He shall also be responsible for seeing that all property taxes on said property are paid and pay all expenses of upkeep of said property, for so long as he lives there. Further, our daughter, SHIRLEY DYER, shall have the right to live at our homeplace for her lifetime.[2] All furniture is to stay in the

---

[1] The Dyers had seven children, five sons and two daughters.

[2] Following this was inserted the handwritten statement, "as long as she i[s] single." The efficacy of this language is not at issue.

home as it is at the time of our death, with the exception that should any of the children wish to have some item which they have given to us, they may have it.

## ITEM FIVE

In the event any of our sons should wish to build a house on the property bequeathed to Sonny Dyer in Item Four hereof, they shall have the right to do so. However, since none of this property is to be sold, they could not sell same.

Following an evidentiary hearing, the superior court entered an order declaring that fee simple title to the property designated as Tract Three (65.34 acres) and referred to in the will as the "farm" was vested in Sonny Dyer; that fee simple title to the property designated as Tracts One and Two (collectively 6.82 acres) and referred to in the will as the "homeplace" was vested in Sonny Dyer, subject to a life estate in his sister Shirley Dyer; that the purported limitations in the will restricting sale forever to only male Dyers were void as against public policy; and that should Sonny Dyer decide to sell any portion of the property described in Tracts One, Two, or Three, the Dyer sons would have a right of first refusal to purchase the property at a price offered to Sonny Dyer which was acceptable to him, or at the price at which Sonny Dyer offered such property for sale to a third party, i.e., one who is not a Dyer son.

1. As part of its analysis of the will provisions, the superior court found that the language in Item Five "[i]n the event any of our sons should wish to build a house on the property bequeathed to Sonny Dyer in Item Four hereof, they shall have the right to do so" was only the expression of the desire that the sons be permitted to build on the real property and did not grant them any interest in the land. Roger Dyer argues that the language was not precatory but created an easement in gross over the real property to himself and to his brothers. But the argument fails.

An easement in gross, unlike an easement appurtenant, is " 'a mere personal right in the land of another.' " *Church of the Nativity v. Whitener*, 249 Ga. App. 45, 48 (2) (547 SE2d 587) (2001), quoting *Stovall v. Coggins Granite Co.*, 116 Ga. 376, 378 (42 SE 723) (1902). See also *Yaali, Ltd. v. Barnes & Noble, Inc.*, 269 Ga. 695, 697 (3) (506 SE2d 116) (1998). It "is *not* given for the purpose of ingress or egress to and from other land." *Lovell v. Anderson*, 242 Ga. App. 537, 539 (2) (530 SE2d 233) (2000), quoting Pindar, Ga. Real Estate Law & Procedure, § 8-4 (5th ed. 1998).

The language in Item Five does not mention any type of easement. See *Lovell v. Anderson,* supra at 540 (2). And the superior court is not to " 'by construction reduce an estate once devised absolutely in fee, by limitations contained in subsequent parts of the will, unless the intent to limit the devise is clearly and unmistakably manifested.' . . . 'An expressed devise cannot be cut down by a subsequent item of doubtful meaning.' " *Houston v. Coram,* 215 Ga. 101, 103 (2) (109 SE2d 41) (1959). Thus, the fee devised to Sonny Dyer could not be diminished by the questionable language in Item Five.

Moreover, even though an easement in gross is a personal right, inasmuch as it is an interest in land, its express grant should be drawn and executed with the same formalities as a deed to real estate. *Macon-Bibb County Indus. Auth. v. Central of Ga. R. Co.,* 266 Ga. 281, 283 (3) (466 SE2d 855) (1996); *Lovell v. Anderson,* supra at 540 (2). This would include language sufficient to designate with reasonable certainty the land over which the easement extends. *Macon-Bibb County Indus. Auth. v. Central of Ga. R. Co.,* supra at 283 (3).

Roger Dyer maintains that there is a sufficient description of the property in Item Five so as to be an express grant of a "blanket" easement in gross to the "sons" described therein, that is, an easement over the entire tract for the purpose of constructing a house on the property, including such access and uses necessary to complete the structure. It is true that it may suffice to identify the whole tract of land owned by the grantor over which the easement exists. *Macon-Bibb County Indus. Auth. v. Central of Ga. R. Co.,* supra at 283 (3). See also *Howard v. Rivers,* 266 Ga. 185, 186 (2) (465 SE2d 666) (1996); *Glass v. Carnes,* 260 Ga. 627, 632 (4) (398 SE2d 7) (1990). But even accepting arguendo that the language in Item Five is not precatory, that it is meant to create an easement in gross, and that such easement is sufficiently identified as the entire tract of land devised to Sonny Dyer, see *Khamis Enterprises v. Boone,* 224 Ga. App. 348 (480 SE2d 364) (1997), the easement cannot be sustained.

The alleged easement interest contains no limitation whatsoever with regard to time, place, or manner. Thus, the Dyer sons would have the right to build any kind and description of a structure as a "house" anywhere on the land at any time. This effectively would act as a complete restraint on the alienation of the estates granted in the will, and therefore would be repugnant to those estates.

It is the policy of the law to encourage free alienability of property, and attempts to remove either land or chattels from circulation in trade are discouraged not only by the rule against perpetuities, the abolition of fee tails, the early vesting of estates, and the doctrine of virtual representation, but by the rule against unreasonable restraints on alienation.

*Leathers v. McClain,* 255 Ga. 378, 379 (338 SE2d 666) (1986), quoting Pindar, Ga. Real Est. Law, § 7-156 (2nd ed.). What is more, a condition which is repugnant to a granted estate is void. OCGA § 44-6-43; *Farkas v. Farkas,* 200 Ga. 886 (1), (2) (38 SE2d 924) (1946). Accordingly, any alleged easement in gross must fail.

2. There is no merit to Roger Dyer's alternative argument that if this Court fails to find that Item Five of the will created an easement for the Dyer sons, then the Court should strike Items Four and Five of the will as irreconcilable, so that the real property would pass to the heirs at law through intestate descent and distribution. In construing wills, an intestacy is not favored. *Stanton v. Dickson,* 240 Ga. 15, 17 (1) (239 SE2d 741) (1977). Accordingly, "[i]f the terms of a will are such as to permit two constructions, one of which results in intestacy and the other of which leads to a valid testamentary disposition, the construction is preferred which will prevent intestacy." *Matthews v. Loftin,* 224 Ga. 98, 101 (160 SE2d 399) (1968). Here, the found precatory language of Item Five did not conflict with the estates granted in Item Four. See Division 1, supra. So too, the superior court correctly rejected any interpretation of the restrictive language regarding sale of the real property in Item Four which amounted to a restraint of alienation of the property in favor of finding a right of first refusal in the Dyer sons. See *Shiver v. Benton,* 251 Ga. 284 (304 SE2d 903) (1983).

The farm and homeplace were devised in fee simple to Sonny Dyer, the only child that remained to farm the property, subject to a life estate in the homeplace to Shirley Dyer, an unmarried daughter who returned home to care for the aging testatrix and who took up residence there. The remaining Dyer sons were given a right of first refusal so as to facilitate the parents' wish that, if possible, the land remain in the family should Sonny Dyer place the property for sale. This interpretation of the will by the superior court, as a whole, implements a rational overall scheme of disposition as supported by the evidence of record regarding the testators' intent. See *Bishop v. Kenny,* 266 Ga. 231, 234 (3) (a) (466 SE2d 581) (1996).

3. Lastly, Roger Dyer contends that the superior court erred in differentiating between the "homeplace" and "farm," thereby limiting the life estate granted to Shirley Dyer.[3] But the language of the will itself draws a distinction between the "farm" and the "homeplace." Also, the court was authorized to hear parol evidence regarding any ambiguity in the terms. *Bd. of Regents v. Bates,* 262 Ga. 307, 310 (1) (418 SE2d 8) (1992). And the found distinction has support not only

---

[3] The parties do not dispute the superior court's finding that the interest granted to Shirley Dyer under the will was a life estate.

in the evidence of the physical characteristics and historic uses of the tracts, but also in the testimony of the Dyer children, including that of Roger Dyer.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 15, 2002.

*Stanley R. Lawson*, for appellant.
*Sorgen & Schindelar, Lawrence S. Sorgen*, for appellee.