S92A0359. BOARD OF REGENTS v. BATES et al.

(418 SE2d 8)

SEARS-COLLINS, Justice.

This case involves the construction of a provision in the will of the deceased, Florence Probst McFarlane, which addresses the disposition of her home and the surrounding property. The appellant is the Board of Regents of the University System of Georgia, d/b/a the University of Georgia College of Veterinary Medicine ("Board of Regents"). The appellees are Neal A. Bates, the executor of Mrs. McFarlane's estate, and Cobb County. While Mr. Bates is procedurally aligned as an appellee, the record indicates that he agrees with the appellant on the substantive issues.

Florence Probst McFarlane died on October 4, 1990. This appeal concerns the proper disposition of Mrs. McFarlane's Cobb County home, which sits on approximately 11.3 acres of land. On November 3, 1978, Mrs. McFarlane executed a will prepared by her attorney, Mr. Adolphus Orthwein ("1978 will"). Item XIV of Mrs. McFarlane's will provides as follows:

> I direct that my home and the real property in Cobb County upon which it is located shall go to an appropriate government agency, charity or foundation, to be selected by my attorney, ADOLPHUS B. ORTHWEIN, JR. of 4647 Polo Lane, Atlanta, Georgia 30339, for use as a public park. Should the government agency, charity or foundation selected by Mr. Orthwein be unwilling to accept this property for this purpose or cease to use this property for this purpose said property shall go to the UNIVERSITY OF GEORGIA for the uses specified in Item XVI hereof.[1]

Item XVI of the 1978 will provides that property given to the University of Georgia under the will should be held by the College of Veterinary Medicine, with the income therefrom used to establish a scholarship fund known as the William and Florence McFarlane Scholarship Fund.[2]

On September 6, 1990, Mrs. McFarlane made a number of holographic changes to a copy of the 1978 will, such as adding or changing addresses, and deleting or changing bequests to deceased beneficiaries ("1990 will"). Mrs. McFarlane did not change Item XIV or

---

[1] We note that the Rule Against Perpetuities does not apply to this grant. See OCGA §§ 44-6-204 (5) and 53-12-110 (2).

[2] Item XVI of the will does not give the executor the power to sell the property even if the condition of the offer is satisfied. Rather, Item XVI provides that any property given to the University of Georgia under Item XIV shall be held by the "Veterinarian School," and that the *managers of the scholarship fund* shall have the authority to sell the property.

Item XVI when she made the 1990 will.

Mr. Bates, as executor of Mrs. McFarlane's estate, petitioned the probate court for authorization to sell the real property which is the subject of Item XIV, and to remit the proceeds of that sale to the contingent beneficiary, the University of Georgia. Mr. Bates stated in his petition that he had consulted with Mr. Orthwein, and that they agreed "that a public park on the decedent's homeplace in such close proximity to the Atlanta Country Club is not at all practicable nor feasible," and "that it is his belief that no government agency, charity, or foundation would be willing to accept" the property because of the future interest held by a third party. Both Cobb County and the Board of Regents filed petitions to intervene in the probate of Mrs. McFarlane's will, each claiming to have an interest in the property.

A hearing was held before the probate court, at which Mr. Orthwein testified as to his understanding of Mrs. McFarlane's intent at the time the 1978 will was drafted and executed. According to Mr. Orthwein, while Mrs. McFarlane wanted the property to become a park, she did not want it to belong to or to benefit Cobb County because she disliked Cobb County, having been involved in tax disputes with the County in the past. However, Mr. Orthwein testified, Mrs. McFarlane liked the idea of the property becoming part of the Chattahoochee River National Park ("the Park"), which was then in its initial stages. Item XIV was worded as it presently reads because at the time he drafted the will Mr. Orthwein did not know the name of the legal entity in control of the Park.

At the hearing, several of Mrs. McFarlane's close personal friends, as well as acquaintances she had made during her involvement with area homeowners and planning associations, testified that Mrs. McFarlane had told them specifically on several occasions between 1978 and 1990 that she had provided in her will for her property to go to Cobb County for use as a park. The weight of the testimony at the hearing was to the effect that Mrs. McFarlane above all wanted to preclude the development of her property and preserve the sanctity and tranquility of its natural state.

On July 10, 1991, Mr. Orthwein offered the property to the Chattahoochee River National Park, by letter to the Superintendent of the Park, Sibbald Smith.[3] That offer was rejected by letter from Mr. Smith, who stated that the property would be impossible to manage

---

[3] At the time Mr. Bates filed his complaint seeking permission to sell the property, no offer had been made to *any* "government agency, charity, or foundation." It was not until after Cobb County had filed its May 28, 1991 petition for intervention, contending that the condition precedent to the sale of the property had ·not been complied with, that Mr. Orthwein made the offer to Mr. Smith.

because it was not within the boundary of the Park.[4]

The probate court found the 1990 will to be Mrs. McFarlane's last will and testament, and granted the petitions for intervention filed by Cobb County and the Board of Regents. That court also denied Mr. Bates' petition for authorization to sell the property, finding that

> Mrs. McFarlane was a bright, articulate woman who had definite ideas and was concerned with details. . . . At the time the will was originally executed in 1978, the area along the Chattahoochee River had not been established as a national park, but the public was aware that the plans were underway for the establishment of a park along the river. In 1990, however, the national recreation area along the river had been established for some time, and Mrs. McFarlane was well aware her property was not contiguous to the park. While the intent in 1978, as understood by Mr. Orthwein, was to have the property become part of the national recreation area, by 1990 this was not feasible because of intervening development. Therefore, offering the homeplace to the U. S. Department of the Interior was not an act designed to effect Mrs. McFarlane's first stated intent to have her property used as a public park, even though a cursory look at the situation would suggest that Mr. Orthwein had complied with the will.

The probate court then ordered that

> it is premature for Mr. Bates to sell the subject property and distribute the proceeds to the University of Georgia. In order to carry out the Testatrix's intent, Mr. Bates, as Executor, should insist that Mr. Orthwein offer the property to "an appropriate government agency, charity or foundation" with the capability of creating a public park before attempting to distribute the property to the contingent beneficiary.

In its only enumeration of error, the appellant states that the "trial court erred in denying the Board of Regents' request that the

---

[4] In the brief filed with this court on behalf of the Board of Regents, counsel for the Board of Regents states that the property was offered to the United States Department of the Interior. The probate court also refers to that Department in its order. However, in his letter Mr. Orthwein offered the property specifically to "the Chattahoochee River National Recreation Area of the National Park Service," not generally to the United States Department of the Interior. The offer actually made is not equivalent to the offer purported to have been made.

property be distributed to it pursuant to the terms of Item XIV. . . ."

1. The appellant argues that the probate court erred in admitting parol evidence of Mrs. McFarlane's intent because the language of Item XIV clearly and unambiguously states that the property should be offered only to the entity selected by Mr. Orthwein, and if rejected it must go to the University of Georgia.

"When called upon to construe a will, the court may hear parol evidence of the circumstances surrounding the testator at the time of the execution of the will and parol evidence to explain all ambiguities, both latent and patent." OCGA § 53-2-94. Where a "double meaning is apparent on the face of the instrument, then the ambiguity is a patent one." *Oliver v. Henderson*, 121 Ga. 836, 838 (49 SE 743) (1904). The power given to Mr. Orthwein by Item XIV to select the entity to which the property should be offered is not absolute, it is restricted by the term "appropriate." What Mrs. McFarlane considered to be "appropriate" is not apparent on the face of the document. The term "appropriate" is capable of multiple interpretations, and, therefore, creates a patent ambiguity. Parol evidence is necessary to ascertain Mrs. McFarlane's intent underlying Item XIV, and was properly admitted by the trial court.

2. Secondly, the appellant argues that even if parol evidence was properly admitted, the parol evidence regarding the circumstances surrounding the testatrix at the time of the execution of the 1978 will shows that Mrs. McFarlane intended that her homeplace be offered to the entity that controls the Park. However, the appellant does not dispute that the 1990 will, not the 1978 will, is Mrs. McFarlane's last will and testament. We find sufficient evidence of the circumstances surrounding the testatrix at the time of the execution of the 1990 will to support the probate court's holding that Mrs. McFarlane was well aware that her property was not contiguous to the Chattahoochee River National Park, yet by not changing Item XIV, she affirmed her stated intent that her property should be used as a public park.

3. The appellant further argues that Mr. Orthwein has complied with the terms of the will by offering the property to an appropriate government agency which he selected, and that the property must now go to the University of Georgia.[5] We agree with the probate court that since the "Chattahoochee River National Recreation Area of the

---

[5] In his affidavit in support of Mr. Bates' complaint for declaratory judgment, Mr. Orthwein himself stated that after the execution of the 1978 will, "it became increasingly impracticable to expand [the Park] to include the decedent's home place. . . . In fact, extremely expensive homes and condominiums have been constructed between the national park at its present location and the home place of the decedent. . . ." In light of this statement, it is difficult to see how Mr. Orthwein could reasonably have considered an offer to the entity which maintains the Park as "appropriate" to satisfy Mrs. McFarlane's intent that her property be used as a public park.

National Park Service" could not reasonably have been expected to accept Mr. Orthwein's offer of the property for use as a public park, it was not an "appropriate government agency, charity or foundation" to which to offer the property. Therefore, the probate court properly held that before Mr. Bates may give the property to the University of Georgia, it must be offered to an "*appropriate* government agency, charity or foundation," that is, one which is capable of establishing Mrs. McFarlane's property as a public park.[6]

*Judgment affirmed. All the Justices concur, except Hunt, J., who concurs in the judgment only and Fletcher, J., who dissents.*

FLETCHER, Justice, dissenting.

I would reverse because the will is not ambiguous. The will states that the property "shall go to an appropriate government agency, charity or foundation to be selected by my attorney, . . . for use as a public park." If the selected government agency is unwilling to accept the property for use as a public park, then the property "shall go to the UNIVERSITY OF GEORGIA for the uses specified." The will does not require Mrs. McFarlane's attorney to offer the property to a second government agency, charity, or foundation if the entity initially selected refuses to accept the property.

Mrs. McFarlane's attorney offered the property to the Chattahoochee River National Recreation Area of the National Park Service, an appropriate government agency, for use as a park; the agency declined the offer. Because the agency he selected was unwilling to accept the property for use as a park, the property should go to the University of Georgia. The probate court abused its discretion in ordering the attorney to offer the property to another appropriate agency with the capability of creating a public park. Therefore, I dissent.

DECIDED JULY 6, 1992.

*Michael J. Bowers, Attorney General, Mark H. Cohen, Senior Assistant Attorney General, William W. Calhoun, Staff Attorney,* for appellant.

*Evans & Flournoy, Robert E. Flournoy III, Bentley, Bentley & Bentley, Fred D. Bentley, Sr.,* for appellees.

---

[6] While we find that the entity to which the property was offered was *not* an "appropriate agency, charity or foundation" because it was not capable of establishing Mrs. McFarlane's property as a park, and Mr. Orthwein was apparently aware of that fact prior to making the offer, we make no finding as to who or what *is* appropriate.