**FIFTH DIVISION
MCFADDEN, C. J.,
MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 30, 2019**

# In the Court of Appeals of Georgia

A19A1488. DEMOTT, AS EXECUTOR OF THE ESTATE OF
     RICHARD ERMAN DEMOTT et al. v. DEMOTT.

MCMILLIAN, Presiding Judge.

In this declaratory judgment action, Douglas DeMott, as executor of the estate of Richard DeMott, appeals from the trial court's order granting partial summary judgment in favor of plaintiff Cynthia DeMott regarding the interpretation of her late husband's will, in particular, the conditions placed on a life estate devised to Cynthia.[1] In his sole enumeration of error, Douglas asserts that the trial court erred in construing the plain language of the will. As more fully set forth below, we find that the trial court erred in finding the language of the will unambiguous and reverse.

---

[1] For clarity, we will refer to the decedent and the parties by their first names.

The construction of a will is a question of law,[2] which we review de novo. See

*Blalock v. Cartwright*, 300 Ga. 884, 885 (I) (799 SE2d 225) (2017). The record shows

that Richard and Cynthia married on June 28, 2013, and Richard unfortunately died

less than two years later. His brother Douglas was appointed executor of his will.[3]

Prior to his death, Richard and Cynthia lived in the "McNeal House" at 251 DeMott

Road in Hartsfield, Georgia. The McNeal House is one of fourteen houses on a large

piece of land owned by a company known as Gin Creek, LLC, which Richard and

Douglas owned and used to host weddings and other gatherings.[4]

In Item II (a) of his will, Richard devised a life estate in the McNeal House to

Cynthia as follows:

> It is my desire that my spouse, Cynthia Slocumb DeMott, shall have the right to *live* [in] our home, subject to any indebtedness secured thereby, for as long as she so desires provided that she *resides* in the home as her primary residence for at least nine months out of the year and so long as she remains unmarried. At my spouse's death, remarriage or at such time as she fails to *live* in our home as her primary residence for at least nine

---

[2] *See v. Mitchell*, 287 Ga. 551, 552 (700 SE2d 338) (2010).

[3] The will was signed by Richard in September 2014.

[4] Many of the houses on the property are used as rental homes for clients.

2

months out of the year, all interest in my home shall pass to Gin Creek, LLC. (Emphasis supplied.)

On March 13, 2017, Cynthia received a letter from Douglas' counsel alleging that she had only resided in the McNeal House for a total of 60 days in the prior year and demanding possession of the property. Cynthia refused and filed a complaint for declaratory judgment, seeking a construction and interpretation of the will regarding her life estate. In the course of the proceedings, the parties stipulated that the will is unambiguous, such that the trial court should interpret the will as a matter of law without parol evidence. The parties also agreed that the pending motion for interlocutory injunction would be converted into a motion for partial summary judgment. Following a hearing, the trial court granted partial summary judgment in favor of Cynthia, finding that the will does not require Cynthia to physically live in the home for any amount of time so long as she *intends* to reside in the home as her primary residence for at least nine months out of the year. This appeal followed.

Douglas asserts that the trial court erred in its interpretation and urges us to find that the will requires Cynthia to physically live in the McNeal House for at least nine months out of the year. On the other hand, Cynthia maintains that as long as she

3

intends to use the McNeal House as her primary residence, even if she physically stays elsewhere, she retains the life estate.

> The cardinal rule in construing the provisions of a will is to determine the intent of the testator. It is well settled, however, that there in no room for construction when the meaning of the words used in the will is so plain and obvious that it cannot be misunderstood. This is true even if the words used in the will express a meaning entirely at variance with the real intention of the testator. The plain and unambiguous terms of a will must control and parol evidence cannot be used to contradict or give new meaning to that which is expressed clearly in the will.

(Citations and punctuation omitted.) *Smith v. Ashford*, 298 Ga 390, 393 (1) (782 SE2d 251) (2016). Equally important, "[t]he entire document is to be taken together, and operation should be given to every part of it." (Citation omitted.) *See v. Mitchell*, 287 Ga. 551, 552 (700 SE2d 338) (2010). Where the will is ambiguous, the court should apply the rules of construction and may "consider parol evidence of circumstances surrounding the testator at the time of execution of the will in order to ascertain the testator's intent." *Smith*, 298 Ga. at 393 (1).

Turning to the pertinent terms of the will, we are unpersuaded by the parties' stipulation below that the will is unambiguous. The will provides that Cynthia has a life estate in the McNeal House "for as long as she so desires" and that the life estate

is conditioned upon, among other things, "that she reside[] in the home as her primary residence for at least nine months out of the year." In support of her interpretation, Cynthia relies on the legal definition of "resides" and points to evidence that she held out the McNeal House as her legal residence, including receiving her mail and bills there and listing the house as her primary residence on her tax returns. We find that the first sentence of Item II (a) might reasonably be interpreted to support Cynthia's assertion that no physical presence in the McNeal House is required so long as she intends to use the house as her primary residence.

In contrast, Douglas points us to the sentence immediately following:

At my spouse[']s death, remarriage or at such time she fails to *live in our home* as her primary residence for at least nine months out of the year, all interest in my home shall pass to Gin Creek, LLC. (Emphasis supplied.)

The phrase "live in our home" is not a legal term and in connection with a house, the verb "to live" commonly means "to occupy a house: DWELL, RESIDE." Webster's New Third International Dictionary 1323 (1966). Douglas also asserts that the following subparagraph further indicates Richard's intention that Cynthia physically live or "remain" in the home:

All my household furniture and furnishings, books, pictures, objects of art, I give and bequeath to Gin Creek, LLC; but it is my desire, though no[t] a directive, that as long as my wife *remains in the house*, as stated in section (a) above, that these items remain in the house for her use. (Emphasis supplied.)

When considered together, these provisions could also reasonably be interpreted to support Douglas' assertion that his brother only intended for Cynthia to retain the life estate so long as she actually occupies or lives in the home "for at least nine months out of the year." See *Anderson v. Anderson*, 299 Ga. 756, 759 (2) (791 SE2d 40) (2016) (although one sentence, considered alone, appeared sufficient to convey a fee simple interest, the sentence immediately following conveyed a clear intent to grant only a life estate).

Because the will uses the alternative and seemingly interchangeable words "live," "reside," and "remain" to describe the conditions of Cynthia's life estate, and these words are capable of multiple, reasonable interpretations, parol evidence is therefore necessary to resolve this ambiguity and ascertain Richard's intent in devising the life estate. See OCGA § 53-4-56 ("In construing a will, the court may hear parol evidence of the circumstances surrounding the testator at the time of the execution to explain all ambiguities, whether latent or patent."); *Legare v. Legare*,

268 Ga. 474, 476 (490 SE2d 369) (1997); *Bd. of Regents v. Bates*, 262 Ga. 307, 310 (1) (418 SE2d 8) (1992). Accordingly, we reverse and remand this case for further proceedings consistent with this opinion. See *Scheridan v. Scheridan*, 132 Ga. App. 210, 211 (2) and (3) (207 SE2d 691) (1974). In so holding, we do not reach the issue of whether Cynthia has in fact satisfied any of the conditions of the life estate.

*Judgment reversed, and case remanded. Senior Appellate Judge Herbert E. Phipps concurs. McFadden, C. J., concurs specially.\**

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. SEE COURT OF APPEALS RULE 33.2 (a).**

A19A1488. DEMOTT et al. v. DEMOTT.

MᴄFᴀᴅᴅᴇɴ, Chief Judge, concurring specially.

I agree with the majority that we should remand this case, but for a different reason.

Under the operative language of subparagraph II (a), Cynthia DeMott forfeits her life estate if she "fails to live in [the former marital] home as her primary residence for at least nine months out of the year." That language, particularly when read as in the context of the will as a whole, and in light of "the law . . . [dis]favor[ing] conditions remediable by forfeiture," *Kale v. Wilson*, 284 Ga. 536, 537

(668 SE2d 729) (2008), establishes unambiguously a precondition to forfeiture: another residence. Cynthia DeMott cannot be said to have "fail[ed] to live in [the former marital] home as her primary residence" unless and until she establishes another "primary residence."

The amount of time DeMott has spent in the marital residence would become relevant only if a second residence is shown. But the arguments and proceedings below focused exclusively on the time spent DeMott spent in the marital residence; the trial court does not appear to have considered the issue of the existence of a second residence. Because it is appropriate for the trial court to address this issue in the first instance, I agree that the case should be remanded. So I specially concur.

1. *Language.*

Our analysis of a legal text begins with the ordinary meaning of its words. *Farmer v. Dept. of Corrections*, 346 Ga. App. 387, 389 (1) n.6 (816 SE2d 376) (2018), citing Antonin Scalia & Bryan Garner, Reading Law: The Interpretation Of Legal Texts 69 (1st ed. 2012) ("The ordinary-meaning rule is the most fundamental semantic rule of interpretation.").

The words "live," "home," and "residence" are central to the analysis of the operative language in this case and applicable dictionary definitions of those words

are set out in the margin.[1] Those ordinary meanings, as well as common sense, distinguish sharply between staying as a guest — however welcome — in the home of another and residing in one's own home. People do sometime take up residence in hotels — especially after losing their homes. But staying in a hotel is generally very different from residing at home. Persons who have a home or residence where they keep their possessions, receive mail, and expect to return at journey's end do not, in ordinary usage, refer to their hotel room or their hosts' guest rooms as their own home

---

[1]"Live," as verb, is most applicably defined in Webster's New International Dictionary as "[t]o make one's abiding place or home; to dwell; reside. 'Jacob *lived* in the land of Egypt seventeen years.'" Webster's New International Dictionary (2nd ed. unabridged, 1955) (emphasis in original; citation omitted).

"Home," as a noun, is most applicably defined in Webster's New International Dictionary as "[o]ne's own dwelling place; the house in which one lives; esp., the house in which one lives with his family; the habitual abode of one's family; also a dwelling house. 'The disciples went away again to their own *home*.'" Webster's New International Dictionary (2nd ed. unabridged, 1955) (emphasis in original; citation omitted).

"Residence" is most applicably defined in Webster's New International Dictionary as "[t]he place where one actually lives or has his home; a person's dwelling place or place of habitation; an abode. A person's place of *residence* may or may not be identical with his *domicile*, though the term *residence* is ordinarily used and legally construed as merely implying the fact of actual abode without reference to the intent necessary to constitute that abode one's domicile (which see). Legally one's residence is often determined by some special circumstance, as whether it is the place to which one has the intention of returning after an absence, or whether it is the place where one goes habitually to sleep. . . . Webster's New International Dictionary (2nd ed. unabridged, 1955) (emphasis in original).

3

or residence. Such persons say that they "live in" or "reside in" their permanent "home" or "residence" and that they are staying or visiting in the hotel room or guest room.

The testator modified the word "residence" with the word "primary." That phrase implies the possibility of a secondary residence and suggests the testator was concerned about that possibility.

2. *Intent.*

When the will is read as a whole, concern about a secondary residence emerges as the testamentary intention underlying the subject provision. Courts are directed by statute to look for the testator's intention.

> In the construction of all wills, the court shall seek diligently for the intention of the testator and shall give effect to such intention as far as it may be consistent with the rules of law. Provided the proof of intention is clear and convincing, the court may transpose sentences or clauses, change conjunctions, and supply or delete words in cases in which a sentence or clause as it stands is unintelligible or inoperative in context.

OCGA § 53-4-55.

When the will is read as a whole, one thing that becomes clear is how little concerned it is with Cynthia DeMott. Excluding signatures and authentications, it

4

runs ten-and-a-half pages. Perhaps half a page is devoted to her. Much of that is the provision at issue, which is subparagraph II (a), under the heading "Home, Personal Property and Personal Effects." Subparagraph II (b) bequeaths all "household furniture and furnishings, book, pictures, and objects of art" to Gin Creek, LLC, but allows her use of them during the course of the life estate. Subparagraph II (c) serves in part to disavow any claim to her own personal property; it bequeaths to her "[a]ll silverware, jewelry, clothing, and other such personal effects." Subparagraphs II (d) and (e) are bequests to others. Subparagraph V (a) bequeaths to her $50,000 out of the proceeds of life insurance policies. The only other references to her are in paragraph XI, Family Relationships: an acknowledgment that she was the testator's wife at the time he executed the will, and an invocation of OCGA § 53-3-3, under which "[a] testator by will may make provision for the spouse in lieu of year's support, in which case the surviving spouse must make an election."

The rest of the will is devoted to passing along Rosemont Vineyards, Gin Creek, LLC, and the proceeds of his life insurance policies to his children and grandchildren. The will provides carefully for the failure of any bequests, for trusts for the benefit of beneficiaries who are minors, for the powers vested in trustees, and so forth. It reflects concern about the continued operations of Rosemont and Gin

Creek, addressing the prospect that the former may be spun off and urging the continued use of a favored vendor at the latter.

So from a reading of the will as a whole, the objectives that emerge are the continued orderly operation of the testator's businesses and the orderly transfer of his assets to his descendants. The testator sought to avoid litigation. And he sought to discourage Cynthia DeMott from taking against the will by asserting her statutory right to a year's support.

Construing the forfeiture provision at issue to be triggered only if and when Cynthia DeMott establishes another primary residence subserves those objectives. As the majority explains, the former marital residence is a part of Gin Creek Plantation. Gin Creek, LLC rents out other houses located there. So if Cynthia DeMott were to use it as rental property or simply abandon it, she would interfere with Gin Creek's operations and so subvert those objectives. She would not subvert those objectives by traveling for work, pleasure, or the discharge of family obligations — such as the obligations to her seriously ill mother that have required her to be away from the marital residence for significant periods of time. Nor would her purchase of a vacation home subvert them — unless the vacation home became her primary residence, and she abandoned the former marital residence.

6

Those objectives would also be subverted if Cynthia DeMott elected to take against the will by asserting her statutory right to a year's support. Construing the will to require a forfeiture under the circumstances of this case would greatly reduce the value of the life estate. Given the modesty of the other bequests to her, such a reduction in the value would increase her incentive to assert that statutory right.

And while the will reflects an effort to avoid litigation, construing it to require a forfeiture would encourage dissension and litigation. Richard DeMott essentially contends that he has been deputized to monitor Cynthia DeMott. Nothing in the will, beyond the provision that she not share the former marital home with a new husband, evidences a desire on the part of the testator to control her from beyond the grave.

As stated above, "the law does not favor conditions remediable by forfeiture." *Kale*, 284 Ga. at 537. And although "[a]ny expression disclosing the [testator's] intention will be sufficient to create a condition, . . . such intention must be definitely expressed." Id. I discern no definite expression of the testator's intention to force DeMott to forfeit her right to the marital residence when she has not established another residence. And if she has not established another residence, then we do not reach the nine-month requirement (which *is* highly ambiguous).

Because the trial court started the analysis at this second step, I agree that we should remand.